**Michael Marion ALLEN, Sr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00096–CR.**

Court of Appeals of Texas, Texarkana.

Submitted April 22, 2002.

Decided May 21, 2002.

Mark W. Hall, Chandler, for appellant.

Henry Whitley, Special Asst. Dist. Atty., Marcus D. Taylor, Wood County Dist. Atty., Quitman, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

Opinion by Justice GRANT.

Michael Marion Allen, Sr. was indicted on five charges of aggravated kidnapping,[1] two charges of aggravated assault with a deadly weapon,[2] and one charge of felon in possession of a firearm.[3] By agreement between the State and Allen, all cases were consolidated for purposes of trial, and in a single hearing, Allen waived formal reading of the indictment on all charges and pleaded guilty to all charges and all enhancements thereto, and the trial court found him guilty on each cause.

Allen elected to have the jury decide his punishment. The jury returned a verdict assessing punishment at seventy-five years' imprisonment. The trial court sentenced Allen in accordance with the jury's verdict. Sentences in all causes were to run concurrently. Allen filed a timely Notice of Appeal.

Allen raises two issues on appeal: 1) that the trial court committed reversible error in failing to sustain his challenge for cause to a prospective juror and 2) that the trial court committed reversible error in excluding evidence favorable to him at punishment. One brief was filed by each party for this case and all companion cases, raising the same issues in each case.

*Statement of Facts*

All eight charges arise out of the same episode. Allen's brief sets forth a statement of facts, in which the State has concurred. We set forth verbatim that version of the facts of the case, with specific record references omitted:

On January 11, 2001, Michael Marion Allen, Sr., Appellant, went to the home of his ex-wife, Jennifer Coker, located in Quitman, Texas. At the time of his arrival, the only people at the home were Jennifer's mother, Ginger Canady, Michael and Jennifer's biological son, Michael Allen, Jr. along with Jennifer's two other sons by her subsequent marriage to Brian Coker, Dylan Coker and Brian Coker, Jr.

Earlier in the day, Michael Allen had called the home looking for Jennifer, ostensibly because he had some papers for her to sign regarding their son. Additionally, he had also spoken by phone to Brian Coker, Sr. indicating that he needed to talk to Jennifer. Sometime that afternoon, Appellant drove to the home to wait for his ex-wife, and while there, spent some time with his son and one of Jennifer's other boys outside the house.

Upon the arrival of Jennifer Coker, Appellant spoke with her briefly before both went into the house. Within a relatively short time after entering the house, Appellant produced a handgun that he had previously taken from the room of his girlfriend's son. Everyone

---

1. Nos. 06–01–00096–CR (Trial Court No. 16,597–2001); 06–01–00097–CR (Trial Court No. 16,598–2001); 06–01–00099–CR (Trial Court No. 16,601–2001); 06–01–00100–CR (Trial Court No. 16,602–2001); 06–01–00101–CR (Trial Court No. 16,603–2001).

2. Nos. 06–01–00102–CR (Trial Court No. 16,607–2001); 06–01–00103–CR (Trial Court No. 16,608–2001).

3. No. 06–01–00098–CR (Trial Court No. 16,599–2001).

was told to "shut up and sit down," and the hostage situation began.

Brian Coker came home at approximately 5:30 p.m. and opened the door to enter. After seeing what was taking place, he shut the door and drove to the police station. No one was there so he went to the Sheriff's office and led them back to his house. Quitman Chief of Police Bill Wansley was notified by phone and he immediately left for the scene. Not long after he initially produced the gun, and before the police arrived, the Appellant allowed Ginger Canady and the two Coker boys to leave the home.

Shortly after the incident began, Appellant began asking to talk with his parole counselor, a Mr. Barr, but he could not be reached. Appellant also wanted to speak with his mother, Francis Cooper, who was at the family business in Shreveport, La. at the time. He also asked to speak with his girlfriend, Virginia Patterson, who was contacted at work in Sulphur Springs, Texas and immediately made arrangements to go to the scene.

Over the next 3–3 1/2 hours, Appellant had numerous phone conversations with Chief Wansley, and his mother. There were approximately eleven peace officers stationed outside the house. Michael Allen, Jr. was ultimately released, leaving only the Appellant and his ex-wife, Jennifer Coker, in the house. They came out on the porch one time, with the gun pointed at the head of Mrs. Coker, and then went back inside. Shortly thereafter, the two came out again and sat down on the porch with the gun still at the head of Mrs. Coker.

Allen ultimately dropped out the ammunition clip from the gun and then threw the gun on the ground at which time he was arrested, ending the stand-off.

### *The Refusal of the Trial Court to Disqualify Venireperson No. 9, Sharon Poteet/Cox*

■ In his first issue, Allen contends the trial court erred in refusing to sustain his challenge for cause of a prospective juror. Venireperson Number 9 was shown on the jury list as being "Sharon Poteet," but was identified in the voir dire proceedings as "Mrs. Cox." Later in the voir dire, Poteet/Cox approached the bench regarding her fitness to serve as a juror in this case, and defense counsel's challenge for cause was denied.

■ The State contends that Allen has not properly preserved this alleged error for appellate review. In order to present reversible error due to the trial court's erroneous refusal to sustain a challenge for cause to a prospective juror, an appellant must show: 1) that all peremptory challenges were exhausted; 2) that the trial court denied the appellant's request for additional peremptory challenges; and 3) that a venireperson upon whom the appellant would have exercised a peremptory challenge was, in fact, seated on the jury. *Adanandus v. State*, 866 S.W.2d 210, 220 (Tex.Crim.App.1993); *Schumacher v. State*, 72 S.W.3d 43, 49 (Tex.App.-Texarkana 2001, pet. filed).

The record of the voir dire proceedings contains no showing of exhaustion of Allen's peremptory challenges or any request for additional challenges. The record fails to demonstrate that the objectionable venireperson was seated on this jury. Under the authority cited above, this issue is overruled as not being properly preserved for appeal.

This issue is overruled.

*The Trial Court's Ruling Excluding Evidence of Possible Child Abuse in the Coker Household Prior to the Events in Question*

■ Allen's second issue concerns the ruling of the trial court excluding from evidence, on objection by the prosecution, of evidence pertaining to possible child abuse occurring in the Coker household prior to the time of the events occurring in this case.

Specifically, testimony was offered concerning suspicious bruises on the body of Allen's son, Mikey, which had resulted in the school that Mikey attended contacting Children's Protective Services (CPS). There was testimony, by way of an offer of proof outside the jury's presence, that Chief Wansley was personally aware CPS had been involved with the Coker family on more than two occasions. Chief Wansley further testified he had actually accompanied CPS to the Child Advocacy Center in Winnsboro for the purpose of taping an interview with one of the Coker children.

A trial court's ruling on the admission or exclusion of evidence may not be disturbed on appeal unless an abuse of discretion is shown. *Erdman v. State,* 861 S.W.2d 890, 893 (Tex.Crim.App.1993). The appellate court looks to see whether the trial court acted without reference to any guiding rules or principles; that the appellate court may decide the ruling differently does not demonstrate an abuse of discretion. The trial court's determination will not be reversed if its ruling is within the zone of reasonable disagreement. *Hardin v. State,* 20 S.W.3d 84, 90 (Tex.App.-Texarkana 2000, pet. ref'd).

■ TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2002) pertains to admission of evidence at the punishment stage of a criminal trial and provides that evidence may be offered by the prosecution and the defense "as to any matter the court deems *relevant* to sentencing, including but not limited to ... the circumstances of the offense for which he is being tried...." (Emphasis added.) As "relevant" is not defined by the Texas Code of Criminal Procedure, the definition of the word as found in TEX.R. EVID. 401 [4] is "helpful to determine what should be admissible under article 37.07 section 3(a)." *Rogers v. State,* 991 S.W.2d 263, 265 (Tex. Crim.App.1999). Evidence at sentencing presents different issues from those to be determined at guilt/innocence. The judge or jury at the punishment stage must choose a punishment range; there are no discreet factual issues to decide and no distinct facts of consequence that proffered evidence can be said to make more or less likely to exist. Admissibility of evidence at the punishment stage of a noncapital felony case has been said to be of a function of policy than of relevancy. Relevancy at punishment should be a question of what is helpful to the judge or jury in determining the appropriate sentence for a particular defendant in a particular case. *Rogers,* 991 S.W.2d at 265; *Miller–El v. State,* 782 S.W.2d 892, 895–96 (Tex.Crim. App.1990); *see also Mendiola v. State,* 21 S.W.3d 282 (Tex.Crim.App.2000).

The disputed evidence arose during defense counsel's cross-examination of one of the State's witnesses, Chief Wansley, the lead officer at the scene of the hostage situation. Defense counsel attempted to question Chief Wansley about his previous contacts with Allen, specifically pertaining to allegations of child abuse occurring at the Coker home. After the State objected,

---

**4.** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

the jury was dismissed and, on an offer of proof on questions from counsel, Chief Wansley testified he had heard of three previous occasions when CPS had been called to the Coker household. Chief Wansley personally accompanied one of the children to the Child Advocacy Center in Winnsboro for a taped interview. Chief Wansley testified he was "told" that the school one of the children attended had noticed suspicious bruises and reported the matter to CPS. At the offer of proof, the State questioned Chief Wansley, and he testified he had formerly lived next door to the Cokers and he had not personally witnessed any activity that could be considered abuse. He further testified that on the night of the events in question, he was the hostage negotiator and that Allen never mentioned anything at that time about his actions being related to allegations of child abuse. Further, Allen's contacts with Chief Wansley about the abuse allegations occurred approximately six months before the hostage-taking event, although defense counsel suggested it was more like two months.

In sustaining the State's objections, the trial court specifically noted the remoteness of the child abuse allegations to the events of that night, and the prosecutor also noted that Allen, during the hostage-taking situation, had not mentioned the alleged abuse. The trial court later, however, specifically left open the possibility that defense counsel could recall Chief Wansley, after Allen had testified as to his state of mind. (It had already been indicated that Allen would testify). However, Allen never attempted to recall Chief Wansley.

We find no abuse of discretion in the trial court's ruling. The remoteness of the allegations, and the fact that the allegations were never mentioned by Allen at the scene of the crime, gives at least some

indication that the abuse claims may have been an afterthought, rather than a precipitating factor in Allen's actions. There was never any testimony connecting the mother with the alleged abuse occurring at the Coker home. Further, Allen did, in fact, testify at the punishment stage of the trial, and although hearsay statements were not permitted in front of the jury, Allen was permitted to testify as to his alleged concerns of physical abuse of Mikey. It is clear from the trial court's rulings that it was concerned about the relevance and the of hearsay aspects of such evidence. These are legitimate concerns of a trial court, and it can certainly not be said that its rulings were made without any guiding rules or principles, or that they were outside the zone of reasonable disagreement.

■ Further, even if the trial court's rulings regarding admission of such evidence were erroneous, Allen must still show harm in such ruling in order to demonstrate reversible error. TEX.R.APP. P. 44.2(a) states that in the case of a "constitutional error" subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. On the other hand, under TEX.R.APP. P. 44.2(b), all other errors, defects, etc. must be disregarded if they do not affect substantial rights. In *Potier v. State*, 68 S.W.3d 657 (Tex.Crim.App.2002), the Court held that erroneous evidentiary rulings by a trial court must deny a criminal defendant his right to present a meaningful defense in order to rise to the level of "constitutional error." The exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from

presenting a defense. *Id.* at 663, 665. As noted above, Allen's personal observations of bruises on Mikey, and his thoughts as to how those bruises got there, were, in fact, presented to the jury, even if the hearsay evidence was not. Thus, denial of admission of Chief Wansley's testimony did not prevent Allen from bringing this matter to the jury's attention. Allen did not further attempt to call Chief Wansley later in the trial, as he was invited to do by the trial court. Even if error, the trial court's ruling did not prevent Allen from presenting a meaningful defense, and thus, the standard of Rule 44.2(b) applies. Under the circumstances, we hold that even if error was committed in the exclusion of Allen's proffered evidence, it did not affect his substantial rights.

This issue is overruled.

Finding no reversible error, the judgment of the trial court is affirmed.