**Dorothy Jean MILLER–EL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 315–88, 316–88.**

Court of Criminal Appeals of Texas,
En Banc.

Jan. 17, 1990.

ishment stage. We granted the State's petition to address admissibility at the punishment stage of testimony relating after-effect of an injury caused to the victim in the course of committing the offense. Tex. R.App.Pro., Rule 200(c)(2).

John H. Hagler (on appeal only), Dallas, for appellant.

John Vance, Dist. Atty., Michael A. Klein, Constance M. Maher, James Nelson, and Bruce Isaacks, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

In a single trial appellant was convicted as a party to the offenses of murder and attempted capital murder. The jury assessed punishment at life in each cause, and the trial court ordered that the sentences run consecutively.

The State was allowed to adduce evidence over objection during the punishment stage of appellant's trial regarding the medical condition and prognosis of the victim of the attempted capital murder offense. In an unpublished opinion, the Dallas Court of Appeals reversed appellant's conviction, holding that insofar as it amounted to "a medical forecast of the victim's future health" rather than "an assessment of injuries on the occasion in question[,]" such evidence was unrelated to any issue at the punishment phase of trial, and "clearly calculated to inflame the minds of the jury[.]" *Miller–El v. State*, (Tex.App.—Dallas, Nos. 05–86–00955 & 05–86–00956, delivered November 25, 1987). In its petition for discretionary review the State contends the prognosis evidence would have been admissible at the guilt stage of trial, and that any evidence admissible at guilt may be admitted at the pun-

### I.

For about nine months prior to the offense appellant was employed as a night maid for the Holiday Inn on Airport Freeway in Irving. Her duties included cleaning the front desk and office area where the motel safe, safety deposit boxes and cash drawers were located. Sometime in late October of 1985, approximately three weeks before commission of the offense, appellant was present at a gathering in her apartment, during which her husband, Thomas Joe Miller–El, was overheard to state that appellant had "cased out" the motel, that he needed money, and that he would kill any witnesses.

A week or so later appellant used her employee discount to arrange a three day meeting of the Moorish Feast Temple, apparently a religious organization, at the Holiday Inn. Two men, garbed in turbans and robes, identified themselves as "security" for the meeting, and were observed wearing communications headsets. One, later identified as Kenney Sonny Flowers, was seen with a gun. After the meeting concluded, appellant never returned to work at the motel.

At 12:30 a.m. on the morning of November 16, 1985, appellant appeared at the motel to collect her last paycheck. Donald Hall, the night auditor, recognizing appellant as an employee, let her into the front desk area and retrieved her check from a safety deposit box. Appellant then left. At about 5:00 a.m., Hall was in the office area training another employee, Douglas Walker, when he heard a noise at the front desk. There he found two black men, whom he later identified as Miller–El and Flowers. Flowers was wearing a headset like the one earlier seen at the Moorish Feast meeting. At first the men requested

a room, but when Hall attempted to comply, Miller–El drew a small submachine gun from a briefcase, and Flowers pulled a pistol. Hall was told he would not be hurt if he cooperated, and he handed over the contents of the cash drawer. Flowers leapt over the counter and brought Walker out to the front desk area.

Flowers then opened the door and let appellant, who had apparently been waiting out of sight, into the front desk area. Appellant proceeded straight toward the safe and safety deposit boxes. Hall testified:

"Q  Did you recognize her?

A  Yes, I did.

Q  Immediately?

A  Yeah, but I was afraid to say anything or act like I recognized her.

Q  Why?

A  Because [sic] afraid I'd be shot if they knew I recognized her.

Q  Mr. Hall, you've said that, when Thomas Joe Miller–El told you nobody would be hurt, it kind of reassured you?

A  Yes.

Q  What went through your mind when you saw [appellant] coming through?

A  I knew he wasn't going to leave us alive.

Q  Why?

A  Witnesses.

Q  Did she have anything on her face?

A  No.

Q  Any type of disguise at all?

A  No, none at all.

Q  She knew you. As a matter of fact, she had seen you just four or five hours before that?

A  That is correct.

Q  And she would know that you knew her?

A  Yes."

Miller–El and Flowers forced Hall and Walker into a closet, and there bound and gagged them, stripped them of valuables and lay them face-down on the floor. Miller–El asked Flowers "if he was going to

do it." Flowers replied that he could not, and left. Miller–El removed the sunglasses he had been wearing up to that point. He shot Walker twice in the back, killing him. He then shot Hall, severing his spine and rendering him a paraplegic. The robbers made off with the motel safe.

From a wheelchair, Hall testified at the guilt stage, without objection, that he had spent seven days in the hospital following the shooting; that he was still undergoing treatment at the time of trial, some ten months later; and that although told by his doctors he would never walk again, he was determined to "keep trying." No other evidence was elicited at the guilt stage pertaining to Hall's condition.

At the punishment stage, however, the State proffered testimony from Dr. Craig Harrison, the surgeon who treated Hall in the emergency room. As the trial court characterized it, Harrison's testimony was intended to inform the jury of "the nature of the the injury [to] ... Hall and his current prognosis." Appellant objected that such testimony was relevant to no material issue at punishment, and was solely intended to prejudice the jury. The State argued the testimony would have been admissible at the guilt phase, and was therefore admissible at punishment. Expressly declining to state "reasons," the trial court admitted the testimony.

Accordingly, Harrison outlined for the jury the "special needs" that "[a] spinal chord [sic] patient, as we call them, ... will have ... related to their injury for the rest of their life." He testified that as a result of his paralysis, Hall will never regain bladder and bowel control. Nor will he ever recover sexual and procreative functions. He will be required to maintain a constant vigilance to prevent infection and bed sores. Recurring spasticity may ultimately deprive him even of the use of a wheelchair.

## II.

The court of appeals reversed appellant's conviction on authority of this Court's deci-

sion in *Fowler v. State*, 171 Tex.Cr.R. 600, 352 S.W.2d 838 (1962). *Fowler* involved a prosecution for assault with a motor vehicle. The trial court allowed evidence from a physician going beyond the nature of the injury caused, *viz:* a broken leg and thumb, to what this Court characterized as "prognosis" testimony that the victim had sustained a permanent disability in the form of a shortened leg and a limp. The Court reversed the conviction, observing that this latter testimony did not "solve[ ] any issue in the case[,]" and was "no doubt prejudicial and inflammatory to the rights of the appellant before the jury, and it probably resulted in the imposition of a heavier penalty than would have been imposed absent this testimony." *Id.*, at 352 S.W.2d 840–41. The court of appeals distinguished *Levell v. State*, 453 S.W.2d 831 (Tex.Cr.App.1970), which purports to overrule *Fowler* insofar as it conflicts. *Levell* was prosecuted for the offense of robbery with firearms. The court of appeals noted that, unlike in *Fowler*, the State had a burden in *Levell* to show the nature of the assault and violence involved. Here, as in *Fowler*, the court of appeals reasoned, "[a]t the punishment stage ... the State had no burden to demonstrate the nature and extent of the victim's injuries." Concluding that it was irrelevant to any issue at punishment, and calculated to inflame the jury, the court of appeals held that Dr. Harrison's testimony should not have been admitted.

The State now argues that nature and extent of a victim's injury may always be established at the guilt stage of trial in a prosecution for attempted murder. See *Ortiz v. State*, 577 S.W.2d 246 (Tex.Cr.App. 1979), and cases cited at 249. The rationale for this rule is that evidence of the extent of injury is probative of the specific intent to kill, which the State must demonstrate in order to prove up the offense. Indeed, in *Gilmer v. State*, 157 Tex.Cr.R. 109, 246 S.W.2d 639 (1952), involving a prosecution for assault to murder, the Court based its holding that the evidence was sufficient to sustain the conviction upon the fact that

the defendant shot his victim in the back and severed his spinal cord. Relying upon *Hargrove v. State*, 579 S.W.2d 238 (Tex.Cr. App.1979), the State reiterates the argument made to the trial court that because evidence of extent of injury is admissible at the guilt stage, it may also be adduced at punishment.

■■■ We agree the bare fact of Hall's paralysis was admissible at the guilt stage of appellant's trial as probative of Miller-El's intent to kill both Walker and Hall. We cannot agree, however, that Harrison's testimony regarding Hall's future hardship as a paraplegic had any tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial. Tex.R.Cr.Evid., Rule 401. Because Harrison's testimony was irrelevant to any guilt issue, and hence would not have been admissible over objection at that stage of trial, the State's argument fails at its inception.

### III.

■■ We nevertheless reject the court of appeals' conclusion that Harrison's testimony was inadmissible at the punishment stage of trial. Although it was not admissible at the guilt stage of trial, at least on the peculiar facts of this case we conclude evidence of the long term effect of the injury to Hall was admissible as a "circumstance of the offense." That is to say, we deem that to have been an appropriate consideration for the factfinder at the punishment stage of this non-capital felony trial in exercise of its unfettered discretion to assess whatever punishment within the prescribed range it sees fit. See *Murphy v. State*, 777 S.W.2d 44, at 63 (Tex.Cr.App. 1988) (Plurality opinion on State's motion for rehearing).

In *Murphy* a plurality of the Court noted that admissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy. This is so because by and large there are no discreet factual issues at the punish-

ment stage.[1] There are simply no distinct "fact[s] ... of consequence" that proffered evidence can be said to make more or less likely to exist. Rule 401, supra. Rather, "[d]eciding what punishment to assess is a normative process, not intrinsically fact-bound." *Murphy*, supra, at 63. What evidence should be admitted to inform that normative decision is not a question of logical relevance, but of policy. Apart from Article 37.07, § 3(a), V.A.C.C.P., however, the Legislature has not set a coherent policy to guide courts in discerning what evidence is appropriate to the punishment deliberation. Moving to fill the policy void, this Court has declared that, subject to limitations imposed by Article 37.07, § 3(a), supra, evidence of "the circumstances of the offense itself or ... the defendant himself" will be admissible at the punishment phase. *Murphy*, supra, at 63, quoting *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex. Cr.App.1979).

■ It seems clear to us that one "circumstance of the offense" is degree of injury, even extending into the future, so long as a factfinder may rationally attribute moral culpability to the accused for that injury.

Albeit in context of capital sentencing proceedings, the United States Supreme Court has addressed the question of admissibility of victim impact evidence at the punishment stage of trial. In *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the Court held that a victim impact statement detailing the effect of the murder on the surviving family members, and containing their character-

izations of the victims and the crime, was admitted in evidence in violation of the Eighth Amendment. The Court observed that this information "may be wholly unrelated to the blameworthiness of a particular defendant[,]" and could serve to "divert the jury's attention away from the defendant's background and record, and the circumstances of the crime." 482 U.S. at 504, 505, 107 S.Ct. at 2534, 96 L.Ed.2d at 449, 450. "[I]n the unique circumstances of a capital sentencing hearing[,]" the Court held that evidence of "the full range of foreseeable consequences of a defendant's actions" is not necessarily "relevant." 482 U.S. at 504, 107 S.Ct. at 2533, 96 L.Ed.2d at 449. Only if such evidence "has some bearing on the defendant's 'personal responsibility and moral guilt[,]' " is it admissible to inform a capital jury's punishment decision. 482 U.S. at 502, 107 S.Ct. at 2533, 96 L.Ed.2d at 448, quoting *Enmund v. Florida*, 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140, 1154 (1982). See also *South Carolina v. Gathers*, 490 U.S. ——, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989).

Without deciding that *Booth* applies in a non-capital context, see 482 U.S. at 507, n. 10, 107 S.Ct. at 2535, n. 10, 96 L.Ed.2d at 451, n. 10, we observe that Dr. Harrison's testimony does bear on appellant's moral blameworthiness. At the conclusion of the guilt stage the jury was authorized by the trial court's instructions to convict appellant as a party to the intentional murder and attempted murder perpetrated by her husband, Miller–El, alternatively under the provisions of V.T.C.A. Penal Code, § 7.02(a)(2) and § 7.02(b).[2] Hence the jury,

---

1. The court of appeals reasoned that Dr. Harrison's testimony was not admissible at punishment because the State had no burden to demonstrate extent of injury or prognosis at that stage. However, there are rarely specific issues at the punishment stage upon which a burden of proof may be imposed upon the State. No burden of proof has ever been assigned to the broad "issue" of what punishment to assess. See *Wright v. State*, 468 S.W.2d 422 (Tex.Cr.App. 1971); *Murphy*, supra, at 62–63, n. 10.

2. § 7.02(a)(2) reads:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

\*   \*   \*   \*   \*   \*

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" § 7.02(b) reads:

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually

in finding her guilty, necessarily concluded either that she intentionally promoted or assisted in the commission of murder and attempted murder, or that, in facilitating a conspiracy to commit robbery, she should have anticipated those events. The evidence adduced at the guilt stage of trial amply supports an inference that appellant expected both her coworkers would be killed in the course of the robbery. She knew her husband had threatened to kill witnesses. She knew her coworkers would recognize her, but made no attempt to conceal her identity. The jury's guilty verdict indicates it believed she either intended Hall would be killed along with Walker, or at least should have anticipated as much under the circumstances.

Thus, the injury actually caused to Hall, his paralysis, did not outrun appellant's moral culpability—she either intended or should have anticipated his death. In either event she is "blameworthy," even in contemplation of *Booth v. Maryland,* supra. Under these circumstances we deem it appropriate, in absence of legislative authority to the contrary, to allow the sentencing jury to consider the full extent of the damage done, even as to likely future pain and suffering. Unless we are to hold that retribution is not a permissible component of a jury's otherwise unfettered discretion to assess whatever punishment it sees fit given the circumstances of the offender and the offense, we must conclude this jury was entitled to hear and consider Harrison's testimony to inform that discretion.

We believe the court of appeals' reliance on *Fowler v. State,* supra, was misplaced. That case was decided before bifurcation of criminal trials was accomplished in 1965. The prognosis evidence in *Fowler* was indeed irrelevant to any issue at the guilt stage of that unitary trial, and for that reason alone its admission was error, without reference to whatever legitimacy it

committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one

may have had in determining proper punishment. See generally Part II of *Murphy v. State,* supra, at 58–62.

We therefore hold that the prognosis evidence in this cause was admissible at the punishment stage of appellant's trial as a circumstance of the offense. *Murphy v. State,* supra.

The judgment of the court of appeals is reversed. The cause is remanded to that court to consider appellant's third point of error, which has not yet been decided.

McCORMICK, P.J., concurs in the result.

DUNCAN and TEAGUE, JJ., dissent.

that should have been anticipated as a result of the carrying out of the conspiracy."