In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00026-CR


______________________________




SHAWN FRANKLIN WARREN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. CR06-188




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley


Concurring Opinion by Justice Carter


O P I N I O N



 Having been found guilty by a jury of sexual assault of a child, see Tex. Penal Code Ann.
§ 22.011 (Vernon Supp. 2006), and sentenced to seven years' confinement, Shawn Franklin Warren
brings this appeal. We affirm the trial court's judgment.

FACTS

 The incident that precipitated the filing of charges against Warren commenced on March 16,
2002, when Warren and his girlfriend, Ashley Nicole Prince, were at a family get-together at the
home of Warren's aunt. The evidence at trial showed that when it was time to leave, Warren's cousin
and her fourteen-year-old friend, S.E., left with Warren and Prince to spend the night at Prince's
residence. On the way to Prince's residence, Warren made a way-stop to purchase vodka and mixers
and then they all proceeded to the Prince residence, where all four drank vodka and smoked
marihuana together.

 During the night, S.E. came to be under the influence of the drugs and alcohol and was in bed
with both Warren and Prince. S.E. began to weep and cry out that she was a virgin and asked to be
left alone. When Warren's cousin came into the bedroom where they were, Warren threatened to kill
her unless she left. Prince then performed cunnilingus acts on S.E. (both around and in her vagina)
and Warren inserted his finger into S.E.'s vagina. 

 The next morning when S.E. awoke, Prince recounted the things that had been done the night
before. Using her cell phone, S.E. called her mother and asked her to come immediately and take
her home. On the way from Prince's house, S.E. related the previous night's events to her mother,
who contacted the police; S.E. was taken to more than one hospital for examination and was
interviewed by representatives of the Child Advocacy Center. 

 There was testimony from Prince that related the entire incident; S.E. told the same story; and
S.E.'s mother testified as to the outcry made by S.E. the morning after the incident, during which S.E.
had told her mother of the occurrences of the night before.

 Between the night of the incident and the time of trial, S.E. and her mother testified S.E.
began to demonstrate self-destructive behavior by cutting herself with sharp instruments on her arms
and legs and by hitting walls with her arms hard enough to have fractured a bone.

 At trial, and over Warren's objection, S.E. and her mother each testified at some length about
S.E.'s self-destructive behavior that had arisen since the incident and about how the actions of
Warren and Prince had detrimentally impacted S.E.'s mental state. Kelly Smith, a licensed
professional counselor (who had not interviewed S.E.) testified about the general post-trauma
propensities of children who are victims of sexual abuse toward self-destructive behavior; as he had
with the testimony of S.E. and her mother regarding the post-incident behavior, Warren strenuously
objected.

POINTS OF APPEAL

 Warren raises three points of appeal, collectively alleging that the trial court denied Warren's
due-process rights (1) "by admitting evidence that was not relevant to the indicted offense as
proscribed by Tex. R. Crim. Evid. 401," (2) "by admitting evidence that was more prejudicial than
probative as proscribed by Tex. R. Crim. Evid. 403," and (3) because the erroneous admission of
certain evidence eliminated the presumption of innocence, thereby violating Article 37.07 of the
Texas Code of Criminal Procedure. Each of these points of error complains about the admission of
the same evidence during the guilt/innocence portion, specifically, the evidence involving the sexual
assault's psychological impact on S.E. The first and second of these points argue it was error to
allow the testimony; the third point takes the position that the alleged error was so egregious that it
warrants reversal.

STANDARD OF REVIEW

 In determining whether a trial court erred in admitting evidence, the standard of review is
abuse of discretion. McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). A trial court
abuses its discretion when its decision lies outside the zone of reasonable disagreement. Casey v.
State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

ADMISSIBILITY UNDER RULE 401

 Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any
tendency to make the existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Warren cites and quotes rather extensively from Stavinoha v. State, 808 S.W.2d 76 (Tex.
Crim. App. 1991), Miller-El v. State, 782 S.W.2d 892 (Tex. Crim. App. 1990), and Brown v. State,
757 S.W.2d 739 (Tex. Crim. App. 1988), for the proposition that evidence of the post-incident
impact on S.E. should not have been allowed at the guilt/innocence phase of the trial. We do not
find these arguments persuasive.

 In Stavinoha, the defendant pled guilty to the charge of aggravated sexual assault; the sole
issue on appeal was whether the trial court had erred by admitting testimony during the punishment
trial from the victim and her mother regarding the impact Stavinoha's crime had brought upon the
victim and her family. 808 S.W.2d at 77. The Texas Court of Criminal Appeals ultimately
concluded the trial court had not erred. Id. at 78-79; cf. Killebrew v. State, 746 S.W.2d 245, 247-48
(Tex. App.--Texarkana 1987, pet. ref'd). Despite the end result of Stavinoha, that case is
procedurally distinguishable from the case at bar. The question in Stavinoha concerned the
admission of testimony during punishment. Warren's arguments in the case now before this Court
concern the trial court's decision to admit such evidence during the trial on guilt/innocence. We,
therefore, conclude Stavinoha provides little support for Warren's points of error. See Stavinoha,
808 S.W.2d at 78 (distinguishing a review of evidence admitted at punishment from review of
evidence admitted during guilt/innocence).

 Miller-El was an attempted capital murder case in which testimony by the physician (who
had treated one of the victims) was admitted during the punishment trial about the nature of the
victim's injuries and the latter's prognosis when he arrived at the emergency room. 782 S.W.2d at
893. In an unreported opinion, the Dallas Court of Appeals reversed the trial court's decision to
allow such evidence. Id. The Texas Court of Criminal Appeals reversed the Dallas court, reinstating
the trial court's judgment. Id. at 897. Like Stavinoha, Miller-El is procedurally distinguishable from
the case before us in that the issue in Miller-El concerned the admission of evidence during the
punishment phase of a trial, rather than guilt/innocence. Additionally, Miller-El is factually
distinguishable because it concerned only testimony from a witness who was not a victim of the
accused's alleged criminal conduct. See, e.g., Roberts v. State, 220 S.W.3d 521, 531 (Tex. Crim.
App. 2007) (testimony by victim of another crime properly admitted by trial court and did not
constitute "victim impact" testimony); Espinosa v. State, 194 S.W.3d 703, 711 (Tex. App.--Houston
[14th Dist.] 2006, no pet.) (distinguishing admissible impact testimony from potentially inadmissible
impact testimony based on whether indictment specifically names testifying witness). Moreover,
the fact that such evidence was allowed in Miller-El in the punishment phase does not mean that the
same kind of evidence was necessarily disallowed at the guilt/innocence phase in Warren's trial.

 Of the three cases mentioned above, the most relevant to this matter is Brown, 757 S.W.2d
739. In Brown, the defendant was charged with sexual assault. Id. Brown, while denying that he
had been the perpetrator of the assault (he presented an alibi defense), never denied that the assault
had occurred. Id. at 740. Nevertheless, the trial court allowed evidence in the guilt/innocence phase
of the trial as to the emotional impact the assault trauma had visited on the victim. Id. The Texas
Court of Criminal Appeals concluded the evidence of trauma was irrelevant as to the matter of guilt,
but the court reached this result because there was no contest raised by Brown to the issue of whether
an assault actually did occur. (1) Under Brown, if it is contested that an offense of the nature of sexual
assault actually did occur, then the subsequent adverse reaction of the victim to the occurrence is
relevant to show the fact of the occurrence. Id.; cf. Longoria v. State, 148 S.W.3d 657 (Tex.
App.--Houston [14th Dist.] 2004, pet. ref'd).

 Warren now maintains that he never questioned or put into issue the fact that S.E. had been
sexually assaulted, only disputing his participation in the assault; in other words, Warren takes the
position that the assault was carried out solely by Prince and that he did not engage in the activities
for which he had been charged. Therefore, Warren posits, the testimony concerning the emotional
impact of the sexual assault on S.E. was not relevant to the issue of his guilt or innocence because
S.E. would have suffered the same traumas whether it was carried out solely by Prince or whether
it was jointly performed by the two of them as the testimony showed. 

 The problem is: Warren's trial strategy of taking the position that a sexual assault did occur,
but that he was not a participate in that assault, is not clearly enunciated anywhere in the record. The
first time this strategy is unequivocally indicated is in the brief filed with this Court. There are hints
of that trial posture in Warren's closing arguments, but there is certainly nothing in Warren's conduct
of the trial as the State was building its case to suggest that Warren admitted that any sexual assault
occurred. 

 The first mention of this post-incident impact trauma to S.E.'s psyche was presented during
testimony from S.E.'s mother. When it first arose, Warren objected to its introduction. At a bench
conference concerning the objection, this exchange occurred:

 [Warren's Counsel]: . . . . This testimony is much more suitable for
sentencing rather than guilt/innocence. It is prejudicial and has nothing to do with
whether or not the offense happened, whether it was committed by my client. 


 [The State]: The behavior of the child is certainly relevant to whether or not
it occurred.


 [Warren's Counsel]: Sentencing phase.


(Emphasis added.)

 The second time that the matter of S.E.'s post-incident conduct arose was during the
testimony of S.E. herself. At that time, again at an exchange out of the hearing of the jury, it was
said:

 [Warren's Counsel]: Judge, I understand that you note my running objection,
but I have to strongly reurge the objection. It has nothing to do with the
guilt/innocence phase or whether or not the offense occurred, whether or not my
client exhibited the offense. It has completely to do with sentencing and victim
impact and things of that nature. But it's completely inappropriate.


 [The State]: May I respond, Your Honor?


 THE COURT: Yes.


 [The State]: The evidence tends to support the credibility of the witness as
to the traumatic event that she has previously testified to. It is in support of the
credibility of her testimony.


 [Warren's Counsel]: The credibility of her testimony is best buttressed by her
recollection of the offense, alleged offense, and what occurred that night, but if there
is any probative value to it, it's far outweighed by the prejudicial value to my client.


(Emphasis added.)

 The final venture into the post-incident impact involved the testimony of licensed
professional counselor Smith. Warren again objected along the same vein as before, insisting that
Smith's testimony was not "relevant or applicable to whether [Warren] committed the criminal
offense he's been indicted with" and that it is "really intended to inflame the jury on guilt/innocence
phase, as opposed to sentencing."

 There are other decisions that, when quotes are taken out of context, would suggest that no
such testimony from the victim about how the crime impacted her life is admissible at the
guilt/innocence stage of a trial. See, e.g., McClenton v. State, 167 S.W.3d 86, 92 (Tex. App.--Waco
2005, no pet.) ("The crime's after-effects on the victim is not relevant at the guilt-innocence phase.");
Garrett v. State, 815 S.W.2d 333 (Tex. App.--Houston [1st Dist.] 1991, pet. ref'd). However, those
cases are easily distinguishable from this; in those cases, there was not a question as to whether the
crime existed. In the instant matter, the post-incident impact on the child is probative of whether the
assault did, indeed, occur, because Warren never formally admitted at trial that the victim had been
sexually assaulted by someone (even by someone other than himself).

 In none of these objections (nor at any other occasion in the trial) does Warren unequivocally
concede that a sexual assault on S.E. did take place; and if there is an implication to that effect, it
is so muted and so faint that the trial court or the State would be engaging in rank speculation to
assume that this was Warren's intention. (2) Rather, the objections as lodged to this testimony appear
limited to two possible points: (1) that the testimony belongs solely at the punishment phase and
(2) that even if it were otherwise relevant on the issue of guilt or innocence, it should be disallowed
because its prejudicial effect outweighs its probative value.

 In every criminal case, the burden is on the accuser to prove three separate elements or
component parts: (1) the specific kind of injury or loss, (2) that someone's criminality occasioned
that injury or loss (as opposed to an accident, for instance), and (3) the identity of the person who
committed the act. Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). In this case, it was
the responsibility of the State to show that certain sexual acts were performed on S.E., that these
sexual acts were intentionally performed, and the identity of the perpetrator(s) of the act. 

 Had Warren expressly acknowledged that a sexual assault on S.E. had occurred, evidence of
the consequences of such an attack on the mind of S.E. would have been rendered irrelevant. 
However, he did not. Therefore, the post-incident impact on the behavior of S.E. was relevant
evidence of the fact that the assault did, in fact, occur. Cf. Longoria, 148 S.W.3d at 659-60
(testimony that two juvenile victims' "[B]ehavior and long-term prognosis would have a tendency
to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant
committed the crimes at all.").

 The testimony in this trial differs markedly from the circumstances in which an expert
testifies that the post-trauma conduct of the victim tends to show that the victim is telling the truth,
such as was the situation in Sessums v. State, 129 S.W.3d 242 (Tex. App.--Texarkana 2004, pet.
ref'd). In that circumstance, the expert, having visited with the child, rendered the opinion that the
child victim was being truthful. This Court ruled the testimony inadmissible. However, the
testimony of S.E. and her mother as to the post-incident conduct of S.E. laid the foundation for the
expert testimony of Smith, who testified that based upon her expert opinion, the self-mutilation
conduct of S.E. was consistent with the conduct of other children who had suffered molestation.
Smith did not venture into her opinion of the truth and veracity of S.E. The courts have repeatedly
determined such expert testimony to be relevant and admissible. Cohn v. State, 849 S.W.2d 817
(Tex. Crim. App. 1993); Kirkpatrick v. State, 747 S.W.2d 833, 836 (Tex. App.--Dallas 1987, pet.
ref'd).

 Accordingly, we hold that the trial court could have reasonably concluded that the
complained-of evidence in this case was both relevant and probative to the issue of whether Warren
had engaged in the conduct for which he was being prosecuted. It matters not that a different trial
court might have, acting out of a greater (and some might argue more prudent) sense of caution,
disallowed this same testimony during the guilt/innocence portion of the trial; the test for appellate
review of the trial court's decision requires more--it requires a showing that the trial court's decision
is outside the zone of reasonable disagreement. In Texas, caselaw supports the trial court's decision
to admit the complained-of testimony, and as such, we cannot say the trial court erred. We overrule
Warren's first point of error.

ADMISSIBILITY UNDER RULE 403

 Even after concluding that evidence is relevant and, therefore, admissible into evidence
pursuant to Rule 401 of the Texas Rules of Evidence, potentially prejudicial evidence must also vault
the hurdle cast by Rule 403. Rule 403 instructs that although some evidence may be relevant, it
"may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice . . . ." Tex. R. Evid. 403. 

 It is significant that Rule 403 employs the word "may," implying that a determination under
this rule is inherently discretionary with the trial court. Montgomery v. State, 810 S.W.2d 372,
378-79 n.7 (Tex. Crim. App. 1990). A trial court, having the ability to observe and weigh the
intonation and demeanor of the witnesses, is in the best position to determine the emotional reaction
of the jury to that evidence. State v. Mechler, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

 A proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not
limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress
the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and
(4) the proponent's need for the evidence. Erazo v. State, 144 S.W.3d 487, 488 (Tex. Crim. App.
2004).

Relevant evidence may be excluded if its probative value is not worth the problems
that its admission may cause. The issue is whether the search for truth will be helped
or hindered by the interjection of distracting, confusing, or emotionally charged
evidence. In making this determination, the [trial] court must assess the probative
value of the proferred item as well as the harmful consequences specified in Rule 403
that might flow from its admission.


Gigliobianco v. State, 210 S.W.3d 637, 640-41 (Tex. Crim. App. 2006).

 Rule 403 does not exclude all prejudicial evidence; rather, it focuses only on the danger of
"unfair" prejudice. "Unfair prejudice" refers only to relevant evidence's tendency to tempt the jury
into finding guilt on grounds apart from proof of the offense charged. Mechler, 153 S.W.3d at 440. 

 Having already determined that the evidence of the post-incident conduct of S.E. was
admissible for the purpose of showing that the assault actually did occur, the trial court then
exercised its discretion in determining whether the potential prejudice it might engender would
outweigh the probative value it would provide. 

 Employing the abuse of discretion standard which was stated above, we determine that the
admission of this evidence was not outside the zone of reasonable disagreement; therefore, the trial
court did not abuse its discretion in allowing the admission of the evidence. We overrule Warren's
second point of appeal.

ELIMINATION OF THE PRESUMPTION OF INNOCENCE

 In order to prevail on the claim that the actions of the trial court effectively removed the
presumption of innocence, Warren must first have prevailed on one of his first two points of error.
Because we conclude the trial court did not err in allowing the complained-of evidence, it is
unnecessary for us to address Warren's third point of error concerning the degree of harm caused by
the alleged error.

 For the reasons stated, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice




CONCURRING OPINION

 The majority opinion finds the evidence of the self-destructive behavior of S.E. was
admissible because Shawn Franklin Warren did not concede that a sexual assault occurred; since it
was necessary to prove that the assault occurred, the self-destructive behavior was relevant as
evidence of recent trauma. I am not convinced that there was a genuine dispute at this trial about the
occurrence of a sexual assault to S.E. during this episode. Early in the State's case, Ashley Prince,
the codefendant, admitted that both she and Warren sexually assaulted S.E. The cross-examination
of Prince attempted to establish that only Prince sexually assaulted S.E. while Warren was asleep
in another room. (3) The defense appeared to be that Warren did not participate in the sexual abuse,
not that no abuse occurred. I believe that the testimony of self-mutilation is admissible, but for
different reasons than presented in the majority opinion.

 In Cohn v. State, an expert testified that children who have been sexually assaulted may show
signs including depression and nervousness. The Texas Court of Criminal Appeals held that, even
though these symptoms did not demonstrate sexual behaviors, expert testimony about signs of
serious anxiety or post-traumatic stress disorder may still be relevant to establish that the child
experienced some type of traumatic event. 

 [To] the extent it [the expert testimony] only provided circumstantial evidence that
the children did experience some traumatic event, Dr. Roy's testimony, both that
anxiety behavior is at least consistent with sexual abuse, and that the children here
exhibited such behavior in his presence, was relevant evidence, under
Tex.R.Cr.Evid., Rules 401 & 402. It should come in as substantive evidence unless
"its probative value is substantially outweighed by the danger of unfair
prejudice . . . ." Tex.R.Cr.Evid., Rule 403.


849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (footnote omitted). 

 Here, an expert witness testified about symptoms experienced by children who have been
sexually assaulted. (4) Smith testified that self-mutilation is a coping mechanism displayed by children
who have been sexually abused if they have not been able to express verbally the intense emotional
trauma the abuse causes. Further, Smith stated that the act of cutting provides the victim with an
emotional release from the abuse and is very often the result of the victim having been abused and
most often sexually abused.

 S.E.'s mother testified about the self-mutilation. That testimony, standing alone, very well
may not have provided probative evidence that S.E. suffered sexual abuse. Generally, one reason
to allow expert testimony is to connect the lay witness testimony regarding factual details to the
scientific explanation for such actions. See Williams v. State, 895 S.W.2d 363, 366 (Tex. Crim. App.
1994). Here, the expert testimony supplied the same kind of testimony that has been allowed in
many other sexual abuse cases. See Perez v. State, 113 S.W.3d 819, 832 (Tex. App.--Austin 2003,
pet. ref'd) ("Expert testimony that a child exhibits behavioral characteristics that have been
empirically shown to be common among children who have been abused is relevant and admissible
as substantive evidence under Rule 702."); Hitt v. State, 53 S.W.3d 697, 707 (Tex. App.--Austin
2001, pet. ref'd). The expert testimony acts as a connection between the actions of the victim (self-mutilation) and the occurrence of a sexual assault. 

 Since the expert supplied the causal connection between the sexual assault and the
self-mutilation, I believe the expert's testimony was admissible. Likewise, because of such
connection, the mother's testimony that S.E. displayed self-mutilation became probative and
admissible. 

 Further, Rule 403 does not require impeachment before this substantive expert evidence,
which has the effect of bolstering, is admissible. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim.
App. 1993) (citing Cohn, 817 S.W.2d at 819). 

 I concur in the judgment of the court, but believe Cohn and its progeny supply the proper
basis for admitting the disputed testimony. 



 Jack Carter

 Justice


Date Submitted: August 6, 2007

Date Decided: September 21, 2007


Publish

1. Nevertheless, it was determined that the same evidence was admitted without objection and
was cumulative of other unobjected-to testimony, rendering any error harmless. Brown, 757 S.W.2d
at 741.
2. During jury argument, Warren apparently continued to challenge the issue of whether the
alleged sexual assault was fact or fiction. Among his statements to the jury is included, "[I]t would
be important for you to look at those records to see what the records denote as far as penetration,
whether or not it actually occurred."
3. Prince was asked by defense counsel on cross-examination: "Isn't it true that that night you
and [S.E.] had a sexual encounter in the back bedroom, and my client was asleep in the master
bedroom?" 
4. No challenge is made to the qualifications of the expert or that such testimony did not meet
the necessary standards. 


e starts in the middle of the chase, and the jury could have believed Roach's testimony
that Tems slowed down at the end of the chase.
            Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one
version of facts and reject another, or reject any of a witness' testimony. Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981). It is the jury's job to judge the credibility of the witnesses
and the weight to be given their testimony, and the jury may resolve or reconcile conflicts in the
testimony, accepting or rejecting such portions thereof as it sees fit. Dunn v. State, 13 S.W.3d 95,
97 (Tex. App.—Texarkana 2000, no pet.). Because the jury is the sole judge of the weight and
credibility of the witnesses' testimony, it may accept or reject any or all testimony of any witness. 
See Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The jury could have believed
Roach's testimony over Tems' and concluded Tems had committed traffic violations, had fled from
the police, and had placed the child in imminent danger of bodily injury.
            When viewed in a neutral light, the evidence supporting the verdict, considered alone, is not
too weak to support the jury's finding of guilt beyond a reasonable doubt. When we weigh the
evidence supporting and contravening the conviction, the contrary evidence is not strong enough that
the State could not have met its burden of proof. The evidence is factually sufficient on all argued
points.
(3)       The Trial Court Was Within Its Discretion in Refusing To Allow Tems' Trial Counsel To
Withdraw
            Tems argues in his fifth point of error that the trial court erred in refusing to permit his trial
counsel to withdraw. During the course of the proceedings in the trial court, Tems' trial counsel filed
two motions to withdraw. 
            At a hearing concerning the first motion to withdraw, Tems complained he did not trust his
trial attorney. Tems testified he was dissatisfied with his trial counsel's representation and wanted
a new attorney. Tems stated that all his trial counsel had ever done was try to get him to plead guilty,
that his trial counsel did not discuss trial strategy but rather only "gave warnings" and "already had
me convicted of two life sentences." Tems stated his attorney had told him that, without a guilty
plea, "I was going to do time." Tems informed the trial court his trial counsel had told him that his
case was a "high profile case," that he would be a "trophy for the district attorney's office," and that
"[he] didn't need a lawyer, [he] needed a deal maker." Tems admitted his attorney had visited him
in jail numerous times and had discussed his pending legal matters. The trial court overruled the
motion to withdraw. The trial court noted that the case was on the trial docket and there was a
possibility that the case may proceed to trial within the week.
            The trial court's decision to deny the motion to withdraw is reviewed for abuse of discretion. 
King v. State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). An indigent defendant's right to counsel
does not require the trial court to appoint a counsel agreeable to the accused. Id. In general,
personality conflicts and disagreements concerning trial strategy do not form valid grounds for
withdrawal. Id. Unless a defendant shows adequate grounds for the appointment of new counsel
or chooses to waive his or her right to counsel and to proceed pro se, he or she must accept the
counsel appointed by the trial court. Garner v. State, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st
Dist.] 1993, pet. ref'd). The trial court did not abuse its discretion in finding Tems had failed to show
adequate cause for the appointment of new counsel based on the first motion to withdraw.
            Three days before voir dire, Tems' trial counsel filed another motion to withdraw. In the
motion, Tems' trial counsel stated he had just received notice that Tems had filed a grievance against
him. Although the grievance had been dismissed before the hearing on the second motion, an appeal
of the dismissal might have been available. The trial court denied the motion to withdraw. 
            When a client files a disciplinary complaint against his or her attorney, an actual conflict of
interest may exist. See id. at 99. Tems argues the injection of the disciplinary proceeding into the
attorney-client relationship made trial counsel and Tems adversaries. According to Tems, the
adversity would prevent any attorney from presenting an adequate defense. However, the filing of
the complaint raises only the possibility of a conflict of interest. Id. The reason a grievance does
not automatically require the appointment of new counsel is obvious; such a rule could be exploited
by the indigent defendant to delay trial or to select the attorney of his or her choice. The contents
of the grievance do not appear in the record, and we cannot conclude the trial court abused its
discretion based on the reasons given during the hearing. The trial court did not abuse its discretion
in finding that Tems failed to show adequate grounds for the appointment of new counsel. Tems has
not shown he was denied his right to counsel as guaranteed by the Sixth Amendment.
(4)       The Trial Court Did Not Improperly Give "Advice to State's Counsel During the Punishment
Phase"
            In his final point of error, Tems contends the trial court gave aid and assistance to the State
in how to proceed. At the commencement of the punishment phase of trial, the following colloquy
occurred outside the presence of the jury:
[THE STATE]: What are we doing here?
 
THE COURT: On the notice of intent to seek enhanced punishment.
 
[THE STATE]: Well, that conviction is already before the jury.
 
THE COURT: Well, I understand that, but he's got to plead to the notice
of intent.
 
[THE STATE]: Well, I'd like to see it done in front of the jury myself, but
. . . .
 
THE COURT: What difference does it make? I'm going to instruct them
that he's done it.
 
[THE STATE]: Well . . . .
 
THE COURT: Let's do it my way for a change. 31,687-B State of Texas
versus James Calvin Tems, at this time, in this cause, Mr. Tems, the State will read
to you its notice of intent to seek enhancement of the range of punishment. You have
it handy?
 
[THE STATE]: 15 to life.
 
THE COURT: No, no, no. Read him the notice.
 
[THE STATE]: The notice? I can do that.

The State then read to Tems the notice that the State was seeking enhancement of punishment by
pleading and proving a prior felony conviction for driving while intoxicated.


 Following the reading
of the enhancement paragraph, Tems pled "true."
            According to Tems, the trial court's comments violated the duty of the trial court to maintain
impartiality throughout the trial. See Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000); see
also Blumburg v. United States, 222 F.2d 496, 501 (5th Cir. 1955).
To the jury the language and conduct of the trial court have a special and peculiar
weight. The law contemplates that the trial judge shall maintain an attitude of
impartiality throughout the trial. Jurors are prone to seize with alacrity upon any
conduct or language of the trial judge which they may interpret as shedding light
upon his view of the weight of the evidence, or the merits of the issues involved. The
delicacy of the situation in which he is placed requires that he be alert in his
communications with the jury, not only to avoid impressing them with any view that
he has, but to avoid in his manner and speech things that they may so interpret.

Blue, 41 S.W.3d at 131. We disagree, though, that the trial court violated its duty to maintain
impartiality. The above colloquy reflects the trial court was simply exercising its authority to control
the order and manner of the proceedings, not giving advice to counsel. "A trial judge has broad
discretion in maintaining control and expediting the trial." Jasper v. State, 61 S.W.3d 413, 421 (Tex.
Crim. App. 2001); Singleton v. State, 91 S.W.3d 342, 351 (Tex. App.—Texarkana 2002, no pet.). 
Tems argues that, if the trial court had not instructed the State how to proceed, the enhancements
may not have been read and the State would not have been entitled to an instruction on the enhanced
punishment range. The record, though, does not support this contention. The State and the trial
court had differing opinions about when the plea should occur. The State stated it would "like to see
[the plea] done in front of the jury," and the trial court desired the plea to occur at that point in the
proceedings.
            We note the reading of the enhancement and the plea occurred outside the presence of the
jury. The Texas Court of Criminal Appeals has suggested that the reading of enhancement
allegations and the defendant's plea should occur while the jury is present. See Turner v. State, 897
S.W.2d 786, 788–89 (Tex. Crim. App. 1995); cf. Linton v. State, 15 S.W.3d 615, 619 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref'd) (any error in failing to read allegations subject to
harmless error analysis). Tems did not object at trial, or argue on appeal, that the trial court erred
in not having the jury present. The Texas Court of Criminal Appeals has suggested that such an
error cannot be raised for the first time on appeal. See Reed v. State, 500 S.W.2d 497, 499 (Tex.
Crim. App. 1973). Further, any error in pleading outside the presence of the jury would be harmless
since Tems pled true to the allegations and the trial court informed the jury of his plea. 
            The trial court's actions reflect it was maintaining control over the proceedings, not giving
advice to counsel. Because the trial court did not violate its duty to maintain impartiality, we
overrule Tems' final point of error.
            For the reasons stated, we affirm the judgment of the trial court.

 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 26, 2005
Date Decided:             August 30, 2005

Do Not Publish