

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-1400-06

---

**TERRY HACKLER, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS COOKE COUNTY

---

KEASLER, J., filed a concurring opinion in which KELLER, P.J., and HERVEY and COCHRAN, JJ. joined.

### C O N C U R R I N G   O P I N I O N

I agree with the majority but write separately to expand on its statement of the facts and applicable law as well as its analysis.

**The Video**

The video shows Dawn approximately two months before she died visiting with her family and friends in her kitchen while celebrating Ashleigh's fourth birthday. In the beginning of the video, Dawn talks with her family and friends while she lights the candles

on the birthday cake.  She then steps aside so her daughter can take center stage while her

family and friends sing "Happy Birthday."  When Ashleigh starts to sing "Happy Birthday"

to herself, Dawn, although outside of the camera's view, can be heard telling Ashleigh that

her guests are supposed to sing the song to her.  Dawn, among the chorus of her family and

friends, can then be heard singing "Happy Birthday" to Ashleigh.  After Ashleigh blows out

the candles, Dawn reenters the camera's view clapping for Ashleigh.  Ashleigh then removes

the candles from the cake and hands them to Dawn.  Finally, just before the video ends,

Dawn picks an object off the cake and hands it to Ashleigh so she can lick the frosting off

of the object.

### Relevancy

During the punishment phase, evidence relevant to sentencing may be admitted.[1]  In

*Salazar v. State*, we made clear that victim related evidence is relevant at sentencing "when

that evidence has some bearing on the defendant's personal responsibility and moral

culpability."[2]  Such evidence relates to the defendant's responsibility and moral culpability

by directing the fact-finder's attention to the specific harm caused by the defendant's crime.[3]

We have identified two types of victim related evidence: (1) victim character evidence and

---

[1] T EX. CODE CRIM. PROC. ANN. art. 37.07.

[2]  90 S.W.3d 330, 335 (Tex. Crim. App. 2002) (citing *Mosley v. State*, 983 S.W.2d 249, 261-62 (Tex. Crim. App. 1998)); *see also Miller-El v. State*, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990).

[3]  *See generally Payne v. Tennessee*, 501 U.S. 808, 825-26 (1991).

(2) victim impact evidence.[4] Victim character evidence details the positive personal characteristics of the victim.[5] Through victim character evidence, the factfinder gains limited access to the victim's life; it serves "'to remind the [factfinder] that the person whose life was taken was a unique human being.'"[6] Victim impact evidence, on the other hand, concerns the effect of the victim's death on the victim's family and friends as well as the community.[7] Victim impact evidence "is designed to remind the [factfinder] that murder has foreseeable consequences to the community and the victims survivor's—family members and friends who also suffer harm from murderous conduct."[8]

The trial judge correctly determined that the video was relevant to the jury in assessing Hackler's punishment. The video had some bearing on Hackler's "personal responsibility and moral culpability."[9] As victim related evidence, the video conveyed information about the actual harm caused by the crime committed by Hackler. The video showed jurors that Dawn McFarland was a unique individual by offering jurors "a quick glimpse" into her life. In viewing the video, jurors could gain a real sense of Dawn as a person by viewing her, first

---

[4] *Id.*

[5] *Mosely*, 983 S.W.2d at 261.

[6] *Salazar,* 90 S.W.3d at 335 (quoting *Payne*, 501 U.S. at 830-31 (O'Connor, J., concurring)).

[7] *Id.*; *Mosely*, 983 S.W.2d at 261.

[8] *Salazar,* 90 S.W.3d at 335.

[9] *Salazar*, 90 S.W.3d at 335.

hand, at home with her family and friends. And when considered in combination with the testimony offered by Dawn's mother-in-law about the effect that Dawn's death had on Ashleigh, the video offered jurors a way to gain an understanding of the loss that Ashleigh suffered as a result of Hackler's conduct.

## Rule 403

Relevant victim related evidence is subject to exclusion under Rule 403 of the Texas Rules of Evidence. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[10] With regard to the exclusion of victim related evidence under Rule 403, in *Mosley v. State*, we said:

> Considerations in determining whether testimony should be excluded under Rule 403 should include the nature of the testimony, the relationship between the witness and the victim, the amount of testimony to be introduced, and the availability of other testimony relating to victim impact and character.[11]

Building on *Mosley* in *Salazar*, we directed courts to weigh the following four factors when conducting a probative value versus unfair prejudice analysis under Rule 403:

- the probative value of the evidence;

- the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way;

---

[10] T EX. R. EVID. 403.

[11] 90 S.W.2d at 336.

- the time the proponent needs to develop the evidence; and

- the proponent's need for the evidence.[12]

Recently, in *Gigliobianco v. State*, we clarified our precedents explaining the application of Rule 403 to "bring it in line with the plain text of 403."[13] We did so by dissecting the Rule's "key phrases."[14] Starting with phrase "probative value," we said that it "refers to the inherent probative force of any item of evidence—that is how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence."[15] Turning to the phrase "unfair prejudice," we said that it "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[16] Next, the phrase "confusion of the issues" "refers to a tendency to confuse or distract the jury from the main issues in the case."[17] To illustrate this, we cited evidence that "consumes an inordinate amount of time to present or answer[.]"[18] As to the fourth phrase, "misleading the jury," we

---

[12] *Salazar*, 90 S.W.3d at 336 (citing *Solomon v. State*, 49 S.W.3d 356, 366 (Tex. Crim. App. 2001); *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000)).

[13] 210 S.W.3d 637, 642 n.8 (Tex. Crim. App. 2006).

[14] *Id*. at 641.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

stated that it "refers to a tendency of an item to be given undue weight by the jury on other than emotional grounds."[19] Lastly, with respect to the final two phrases, "undue delay" and needless presentation of cumulative evidence," we said that they "concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision."[20]

Under the facts of this case, I believe that the trial judge was well within his discretion in concluding that the probative value of the videotape was not substantially outweighed by the danger of any unfair prejudice.

First, I believe that the video was highly probative as victim character and victim impact evidence. As stated above, jurors could gain a real sense of Dawn as a person by viewing her, first hand, at home with her family and friends. And, notably, the video highlighted Dawn's role as a mother to Ashleigh. Thus, the video conveyed what photos of Dawn and testimony about Dawn could not.[21] With respect to the loss suffered by Ashleigh, the video, coupled with Betty's testimony, was used to illustrate the difficulty that Ashleigh had in coping with her mother's death. In sum, the video made it more probable that the jurors would see Dawn as a unique person and develop an understanding of the loss felt by Ashleigh. In other words, the video served as a tool to demonstrate the particular damage that flowed from Hackler's decision to drive while intoxicated.

---

[19] *Id.*

[20] *Id.*

[21] *See c.f.*, *Clayton v. State*, 235 S.W.3d 772, 778-82 (Tex. Crim. App. 2007).

The court of appeals held that the need for the videotape was minimal because numerous witnesses testified about Dawn.[22] I believe, however, that the need for the video was moderate. Again, the video was a unique piece of evidence; it gave jurors the opportunity to witness Dawn first-hand, unfiltered by the perceptions of others.

The video did not have a tendency to confuse the issues or mislead the jury. The video is approximately a minute and a half in length; therefore, it did not take an inordinate amount of time to present. Further, the video did not have a tendency to be given undue weight by the jury. As the court of appeals observed, "Although the video likely involved sympathy from the jurors for the victim's family, sympathy for the victim or her family is not an irrational response."[23]

Finally, for reasons I have already discussed, the video did not unduly delay the proceedings or result in the needless presentation of cumulative evidence.

Based on the foregoing reasons, I concur with the Court's decision to affirm the judgment of the court of appeals.

DATE FILED: February 6, 2008
DO NOT PUBLISH

---

[22] *Hackler v. State*, No. 2-04-446-CR, 2006 Tex. App. LEXIS 4995, at *5 (Tex. App.—Fort Worth June 8, 2006) (not designated for publication).

[23] *Id.*