

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00331-CR

---

THOMAS CAUDILL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2019-417,382, Honorable John J. "Trey" McClendon III, Presiding

---

July 14, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Thomas Caudill, pled guilty in open court to the offense of felon in possession of a firearm[1] and was assessed an enhanced sentence of ninety-nine years'

---

[1] A person may be convicted of unlawful possession of a firearm if a person who has been convicted of a felony "possesses a firearm after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or release from . . . parole, or mandatory supervision which date is later." TEX. PENAL CODE ANN. § 46.04(a), (e) (West Supp. 2020) (a third-degree felony).

confinement.[2]  In a single issue, Appellant asserts the trial court's imposition of the sentence constitutes cruel and unusual punishment.  We affirm.

## Background

Appellant pled guilty in open court to the offense of felon in possession of a firearm. He also pled "true" to two prior felonies of which he was finally convicted—assault of a public servant and burglary of a habitation.[3]  The two enhancements increased his punishment range from that of a third-degree felony, a minimum of two years to a maximum of ten years' confinement, to that of a first-degree felony, a minimum of twenty-five years and a maximum of ninety-nine years' confinement.[4]  In September 2019, a four-day punishment trial was held.

The State's evidence at the punishment trial established Appellant was convicted of two counts of burglary of a habitation with intent to commit theft in August 2006.  He was sentenced to fifteen years' confinement with the sentences to run concurrently until August 1, 2021.  Prior to completing his sentence, he was placed on parole in 2017 after serving approximately eleven years.

---

[2] *See* TEX. PENAL CODE ANN. § 12.42(d) (2019).

[3] Although the indictment also alleged a prior conviction for a third felony for enhancement purposes, the State abandoned the third enhancement paragraph.

[4] *Compare* TEX. PENAL CODE ANN. § 12.34 & 12.42(d) (West 2019).

In July 2017, Appellant was an active member of the Aryan Circle[5] and became a wanted fugitive for violating the terms of his parole.[6] The Texas Department of Public Safety Criminal Investigations Unit surveilled his residence. When officers observed Appellant's accomplice arrive at the residence, they moved in to effect an arrest warrant and were given permission to search the backyard. There, they located several stolen items: motorcycles, trailers, and a scooter. Surveillance footage from cameras mounted on the accomplice's trailer showed Appellant placing the vehicles and trailers in the backyard.[7] The videos also established Appellant was driving a white, Jeep Liberty.

On August 4, 2017, officers spotted the Jeep. When officers moved in to effect a felony-arrest warrant, Appellant engaged a high-speed chase with officers in pursuit. While driving through a residential neighborhood, Appellant ignored stop signs and fired three rounds from a handgun at the pursuing officers. The gunfire nearly struck a pedestrian. Not far from an elementary school, Appellant lost control of his Jeep and crashed. He continued fleeing on foot, leaving April Foskett and her two daughters in the Jeep. Officers described Foskett as "hysterical."

Officers located Appellant with the assistance of a canine unit. When Appellant was placed in custody, he admitted he had used "sixty units of dope." Officers recovered a .45 caliber semiautomatic handgun from his shorts containing two unspent rounds, a

---

[5] The Aryan Circle is a paramilitary organization whose members outside of prison promote violence and distribute narcotics and firearms.

[6] Within months of being paroled, the State filed a blue warrant against Appellant seeking to revoke his parole.

[7] In a subsequent interview with a DPS Special Agent, Appellant admitted to stealing one of the trailers and described how the theft was accomplished.

knife, and a bag containing drug paraphernalia on his person. In the Jeep, officers found a twelve-gauge shotgun loaded with four shells lying between the driver's seat and console.[8] They also found a pair of bolt cutters,[9] multiple knives, and binoculars. In addition to the shotgun and tools, officers also found a bag of plastic button bags commonly used to contain narcotics, two syringes containing a clear liquid, and rolling papers.

At trial, a fingerprint expert from the Lubbock District Attorney's Office testified Appellant had been convicted of the following felony offenses: (1) assault against a public servant in 2002; (2) burglary of a habitation in 2004, (3) burglary of a habitation with intent to commit theft in 2006, and (4) a second offense of burglary of a habitation with intent to commit theft in 2006. At the time he committed the current offense of felon in possession of a firearm, Appellant was on parole with an outstanding warrant to revoke his parole.

At the conclusion of the State's case, the jury found Appellant guilty of the offense of felon in possession of a firearm and sentenced him to ninety-nine years' confinement. When the trial judge announced the sentence, Appellant did not object. On appeal, Appellant asserts his sentence is cruel and usual in violation of federal and state constitutions because (1) he accepted responsibility and pled guilty to the offense and enhancements, (2) there is a great disparity between the maximum sentence for felon in possession of a firearm and the enhanced sentence handed down by the jury, and (3) the

---

[8] Appellant admitted to officers that the shotgun belonged to him.

[9] One officer opined that the bolt cutters were the type of tool that could gain you entry to someone's property to steal anything not bolted down.

sentence is disproportionate as compared with similar sentences for the same crime in this jurisdiction.

Analysis

To preserve error, a defendant must make a timely request, objection, or motion to the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived by a failure to raise those issues in the trial court. *Russell v. State*, 341 S.W.3d 526, 527 (Tex. App.—Fort Worth 2011, no pet.). *See Castaneda*, 135 S.W.3d at 723. Here, when the trial court pronounced Appellant's sentence, he did not object on any grounds or complain that the sentence violated his constitutional rights. Nor did he file a motion for new trial. Thus, because Appellant failed to object at the time his sentence was pronounced and did not raise the issue of excessive sentencing in a post-conviction motion for a new trial, Appellant has not preserved the issue for review.

Nevertheless, even if Appellant had preserved this issue for review, this Court disagrees that the sentence assessed was excessive or constitutionally disproportionate to the offense for which Appellant was convicted. The Eighth Amendment does not require strict proportionality between the crime and the sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003). The precise contours of the "grossly disproportionate" standard apply only in "exceedingly rare" and "extreme" cases. *See Lockyer v. Andrade*, 538 U. S. 63, 72-73 (2003). When the conviction is for a non-capital felony, the Court of Criminal

5

Appeals has described "the sentencer's discretion to impose any punishment within the prescribed range to be essentially 'unfettered.'" *Ex parte Chavez,* 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006) (*quoting Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. Ap. 1990)).

We have generally held that so long as the punishment assessed falls within the punishment range prescribed by the legislature in a valid statute, the punishment is not excessive. *Winchester v. State*, 246 S.W.3d 386, 388 (Tex. App.—Amarillo 2008, pet. ref'd). Here, it is undisputed that the sentence imposed by the trial court is within the range of punishment authorized by the Legislature. That said, however, Texas courts recognize that a prohibition against grossly disproportionate sentences survives under the federal constitution apart from any considerations whether the punishment assessed is within the statute's range. *Id.*

Discussing the proportionality of criminal sentences under the Eighth Amendment; *see* U.S. CONST. amend. VIII, the United States Supreme Court teaches that courts should be guided by the following objective criteria: (1) the gravity and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Heim*, 463 U.S. 277, 292 (1983). In addition, the *Solem* court indicated that the legislatures should be accorded substantial deference, and that "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." 463 U.S. at 290 n.16.

Following *Solem*, the Texas Court of Criminal Appeals has since determined that an appellate court "must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *State v. Simpson*, 488 S.W.3d 318, 322-23 (Tex. Crim. App. 2016) (cleaned up). "In the rare case in which this comparison leads to an inference of gross disproportionality, [the appellate court] then compares the sentence with the sentences imposed for the same crime in other jurisdictions." *Id.* "It is only when this comparative analysis validates an initial judgment that the sentence is grossly disproportionate that the sentence is deemed cruel and unusual." *Id.*

The purpose of the offense of unlawful possession of a firearm by a felon is to "prohibit all felons from possessing weapons at any time all places away from their residence." *State v. Mason*, 980 S.W.2d 635, 638 (Tex. Crim. App. 1998). *See Waddy v. State*, 880 S.W.2d 458, 460 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("[a]nytime a person has possession of a firearm, the threat to public safety remains"). Here, officers recovered a loaded shotgun between the driver's seat and the console of Appellant's Jeep and following a foot pursuit through a residential neighborhood to capture Appellant, recovered a .45 caliber handgun from Appellant's shorts. Appellant does not contest the jury's findings that he possessed these firearms.

In addition, when officers attempted to affect a felony-arrest warrant, Appellant fled, engaging in a high-speed chase while other passengers were in his vehicle. He raced through a residential neighborhood, ignoring traffic signs and endangered the lives of innocent residents. He also endangered lives by firing a .45 caliber handgun from his

7

Jeep at pursuing officers, nearly hitting a bystander. When officers searched the Jeep after he crashed, they found methamphetamine, drug paraphernalia, and plastic baggies typically used in the distribution of drugs.

When conducting an Eighth Amendment proportionality analysis, we may also consider the sentence imposed in light of the accused's prior offenses. *Winchester*, 246 S.W.3d at 390. Here, at the time of the offense, Appellant had prior convictions for the following felonies: assault against a public servant in 2002, burglary of a habitation in 2004, and two counts burglary of a habitation with intent to commit theft in 2005. For his offenses in 2005, his sentence of fifteen years' confinement was imposed on August 1, 2006. After he was paroled, he returned to engaging in criminal activity.

Given these circumstances, we cannot say there is an inference of gross proportionality between offense committed by Appellant and the sentence he received. The United States Supreme Court has held that it did not constitute "cruel and unusual punishment" to impose a life sentence under the Texas "recidivist statute," now section 12.42(d) of the Texas Penal Code, upon a defendant who had been convicted of fraudulently using a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses. *Rummel v. Estelle*, 445 U.S. 263, 265-66 (1980). The circumstances in *Rummel* pale in comparison to the criminal activity supporting Appellant's conviction and sentence. For the reasons stated in this opinion, it is unnecessary to engage in a comparison between Appellant's sentence and sentences imposed for the same crime in this and other jurisdictions. Appellant's single issue is overruled.

8

Conclusion

The trial court's judgment is affirmed.


                                         Lawrence M. Doss
                                             Justice


Do not publish.


Quinn, C.J., concurring in the result.[10]

---

[10] Chief Justice Quinn joins in the opinion to the extent the majority concludes that the issue was not preserved. The remainder is dicta, in his view.