In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00149-CR


______________________________




TOMMY WALTER DARLING, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Eighth Judicial District Court


Hopkins County, Texas


Trial Court No. 0518219




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A jury found Tommy Walter Darling guilty of aggravated sexual assault in several cases,
which were consolidated and tried together. Each conviction was appealed separately, but the briefs
and arguments raised in each appeal are identical.

 Since the briefs and arguments raised in this case are identical to the issues presented in
Darling's companion appeals, and for the reasons stated in our opinion in Darling v. State, cause
number 06-06-00148-CR, we overrule his arguments in this case and affirm the trial court's
judgment.


 Jack Carter

 Justice



Date Submitted: April 2, 2008

Date Decided: August 13, 2008


Do Not Publish




ce favorable to him at punishment. One brief was filed by each
party for this case and all companion cases, raising the same issues in each case. 


Statement of Facts All eight charges arise out of the same episode. Allen's brief sets forth a statement of facts,
in which the State has concurred. We set forth verbatim that version of the facts of the case, with
specific record references omitted:

 On January 11, 2001, Michael Marion Allen, Sr., Appellant, went to the home
of his ex-wife, Jennifer Coker, located in Quitman, Texas. At the time of his arrival,
the only people at the home were Jennifer's mother, Ginger Canady, Michael and
Jennifer's biological son, Michael Allen, Jr. along with Jennifer's two other sons by
her subsequent marriage to Brian Coker, Dylan Coker and Brian Coker, Jr.

 

 Earlier in the day, Michael Allen had called the home looking for Jennifer,
ostensibly because he had some papers for her to sign regarding their son. 
Additionally, he had also spoken by phone to Brian Coker, Sr. indicating that he
needed to talk to Jennifer. Sometime that afternoon, Appellant drove to the home to
wait for his ex-wife, and while there, spent some time with his son and one of
Jennifer's other boys outside the house.

 

 Upon the arrival of Jennifer Coker, Appellant spoke with her briefly before
both went into the house. Within a relatively short time after entering the house,
Appellant produced a handgun that he had previously taken from the room of his
girlfriend's son. Everyone was told to "shut up and sit down," and the hostage
situation began.

 

 Brian Coker came home at approximately 5:30 p.m. and opened the door to
enter. After seeing what was taking place, he shut the door and drove to the police
station. No one was there so he went to the Sheriff's office and led them back to his
house. Quitman Chief of Police Bill Wansley was notified by phone and he
immediately left for the scene. Not long after he initially produced the gun, and
before the police arrived, the Appellant allowed Ginger Canady and the two Coker
boys to leave the home. 

 

 Shortly after the incident began, Appellant began asking to talk with his
parole counselor, a Mr. Barr, but he could not be reached. Appellant also wanted to
speak with his mother, Francis Cooper, who was at the family business in Shreveport,
La. at the time. He also asked to speak with his girlfriend, Virginia Patterson, who
was contacted at work in Sulphur Springs, Texas and immediately made
arrangements to go to the scene.

 

 Over the next 3 - 3 1/2 hours, Appellant had numerous phone conversations
with Chief Wansley, and his mother. There were approximately eleven peace
officers stationed outside the house. Michael Allen, Jr. was ultimately released,
leaving only the Appellant and his ex-wife, Jennifer Coker, in the house. They came
out on the porch one time, with the gun pointed at the head of Mrs. Coker, and then
went back inside. Shortly thereafter, the two came out again and sat down on the
porch with the gun still at the head of Mrs. Coker.

 

 Allen ultimately dropped out the ammunition clip from the gun and then
threw the gun on the ground at which time he was arrested, ending the standoff.

 

The Refusal of the Trial Court to Disqualify Venireperson No. 9, Sharon Poteet/Cox

 In his first issue, Allen contends the trial court erred in refusing to sustain his challenge for
cause of a prospective juror. Venireperson Number 9 was shown on the jury list as being "Sharon
Poteet," but was identified in the voir dire proceedings as "Mrs. Cox." Later in the voir dire, 
Poteet/Cox approached the bench regarding her fitness to serve as a juror in this case, and defense
counsel's challenge for cause was denied.

 The State contends that Allen has not properly preserved this alleged error for appellate
review. In order to present reversible error due to the trial court's erroneous refusal to sustain a
challenge for cause to a prospective juror, an appellant must show: 1) that all peremptory challenges
were exhausted; 2) that the trial court denied the appellant's request for additional peremptory
challenges; and 3) that a venireperson upon whom the appellant would have exercised a peremptory
challenge was, in fact, seated on the jury. Adanandus v. State, 866 S.W.2d 210, 220 (Tex. Crim.
App. 1993); Schumacher v. State, No. 06-00-00192-CR, 2001 Tex. App. LEXIS 8144, at *10-11
(Tex. App.-Texarkana 2001, pet. filed). 

 The record of the voir dire proceedings contains no showing of exhaustion of Allen's
peremptory challenges or any request for additional challenges. The record fails to demonstrate that
the objectionable venireperson was seated on this jury. Under the authority cited above, this issue
is overruled as not being properly preserved for appeal.

 This issue is overruled.

The Trial Court's Ruling Excluding Evidence of Possible Child Abuse

in the Coker Household Prior to the Events in Question


 Allen's second issue concerns the ruling of the trial court excluding from evidence, on
objection by the prosecution, of evidence pertaining to possible child abuse occurring in the Coker
household prior to the time of the events occurring in this case.

 Specifically, testimony was offered concerning suspicious bruises on the body of Allen's son,
Mikey, which had resulted in the school that Mikey attended contacting Children's Protective
Services (CPS). There was testimony, by way of an offer of proof outside the jury's presence, that
Chief Wansley was personally aware CPS had been involved with the Coker family on more than
two occasions. Chief Wansley further testified he had actually accompanied CPS to the Child
Advocacy Center in Winnsboro for the purpose of taping an interview with one of the Coker
children. 

 A trial court's ruling on the admission or exclusion of evidence may not be disturbed on
appeal unless an abuse of discretion is shown. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim.
App. 1993). The appellate court looks to see whether the trial court acted without reference to any
guiding rules or principles; that the appellate court may decide the ruling differently does not
demonstrate an abuse of discretion. The trial court's determination will not be reversed if its ruling
is within the zone of reasonable disagreement. Hardin v. State, 20 S.W.3d 84, 90 (Tex.
App.-Texarkana 2000, pet. ref'd). 

 Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2002) pertains to admission
of evidence at the punishment stage of a criminal trial and provides that evidence may be offered by
the prosecution and the defense "as to any matter the court deems relevant to sentencing, including
but not limited to . . . the circumstances of the offense for which he is being tried . . . ." (Emphasis
added.) As "relevant" is not defined by the Texas Code of Criminal Procedure, the definition of the
word as found in Tex. R. Evid. 401 (4) is "helpful to determine what should be admissible under article
37.07 section 3(a)." Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Evidence at
sentencing presents different issues from those to be determined at guilt/innocence. The judge or
jury at the punishment stage must choose a punishment range; there are no discreet factual issues to
decide and no distinct facts of consequence that proffered evidence can be said to make more or less
likely to exist. Admissibility of evidence at the punishment stage of a noncapital felony case has
been said to be of a function of policy than of relevancy. Relevancy at punishment should be a
question of what is helpful to the judge or jury in determining the appropriate sentence for a
particular defendant in a particular case. Rogers, 991 S.W.2d at 265; Miller-El v. State, 782 S.W.2d
892, 895-96 (Tex. Crim. App. 1990); see also Mendiola v. State, 21 S.W.3d 282 (Tex. Crim. App.
2000).

 The disputed evidence arose during defense counsel's cross-examination of one of the State's
witnesses, Chief Wansley, the lead officer at the scene of the hostage situation. Defense counsel
attempted to question Chief Wansley about his previous contacts with Allen, specifically pertaining
to allegations of child abuse occurring at the Coker home. After the State objected, the jury was
dismissed and, on an offer of proof on questions from counsel, Chief Wansley testified he had heard
of three previous occasions when CPS had been called to the Coker household. Chief Wansley
personally accompanied one of the children to the Child Advocacy Center in Winnsboro for a taped
interview. Chief Wansley testified he was "told" that the school one of the children attended had
noticed suspicious bruises and reported the matter to CPS. At the offer of proof, the State questioned
Chief Wansley, and he testified he had formerly lived next door to the Cokers and he had not
personally witnessed any activity that could be considered abuse. He further testified that on the
night of the events in question, he was the hostage negotiator and that Allen never mentioned
anything at that time about his actions being related to allegations of child abuse. Further, Allen's
contacts with Chief Wansley about the abuse allegations occurred approximately six months before
the hostage-taking event, although defense counsel suggested it was more like two months. 

 In sustaining the State's objections, the trial court specifically noted the remoteness of the
child abuse allegations to the events of that night, and the prosecutor also noted that Allen, during
the hostage-taking situation, had not mentioned the alleged abuse. The trial court later, however,
specifically left open the possibility that defense counsel could recall Chief Wansley, after Allen had
testified as to his state of mind. (It had already been indicated that Allen would testify. However,
Allen never attempted to recall Chief Wansley. 

 We find no abuse of discretion in the trial court's ruling. The remoteness of the allegations,
and the fact that the allegations were never mentioned by Allen at the scene of the crime, gives at
least some indication that the abuse claims may have been an afterthought, rather than a precipitating
factor in Allen's actions. There was never any testimony connecting the mother with the alleged
abuse occurring at the Coker home. Further, Allen did, in fact, testify at the punishment stage of the
trial, and although hearsay statements were not permitted in front of the jury, Allen was permitted
to testify as to his alleged concerns of physical abuse of Mikey. It is clear from the trial court's
rulings that it was concerned about the relevance and the of hearsay aspects of such evidence. These
are legitimate concerns of a trial court, and it can certainly not be said that its rulings were made
without any guiding rules or principles, or that they were outside the zone of reasonable
disagreement.

 Further, even if the trial court's rulings regarding admission of such evidence were erroneous,
Allen must still show harm in such ruling in order to demonstrate reversible error. Tex. R. App. P.
44.2(a) states that in the case of a "constitutional error" subject to harmless error review, the court
of appeals must reverse a judgment of conviction or punishment unless the court determines beyond
a reasonable doubt that the error did not contribute to the conviction or punishment. On the other
hand, under Tex. R. App. P. 44.2(b), all other errors, defects, etc. must be disregarded if they do not
affect substantial rights. In Potier v. State, 68 S.W.3d 657 (Tex. Crim. App. 2002), the Court held
that erroneous evidentiary rulings by a trial court must deny a criminal defendant his right to present
a meaningful defense in order to rise to the level of "constitutional error." The exclusion of a
defendant's evidence will be constitutional error only if the evidence forms such a vital portion of
the case that exclusion effectively precludes the defendant from presenting a defense. Id. at 663,
665. As noted above, Allen's personal observations of bruises on Mikey, and his thoughts as to how
those bruises got there, were, in fact, presented to the jury, even if the hearsay evidence was not. 
Thus, denial of admission of Chief Wansley's testimony did not prevent Allen from bringing this
matter to the jury's attention. Allen did not further attempt to call Chief Wansley later in the trial,
as he was invited to do by the trial court. Even if error, the trial court's ruling did not prevent Allen
from presenting a meaningful defense, and thus, the standard of Rule 44.2(b) applies. Under the
circumstances, we hold that even if error was committed in the exclusion of Allen's proffered
evidence, it did not affect his substantial rights. 

 This issue is overruled.

 Finding no reversible error, the judgment of the trial court is affirmed.

 



 Ben Z. Grant

 Justice


Date Submitted: April 22, 2002

Date Decided: May 21, 2002


Publish
1. Nos. 06-01-00096-CR (Trial Court No. 16,597-2001); 06-01-00097-CR (Trial Court No.
16,598-2001); 06-01-00099-CR (Trial Court No. 16,601-2001); 06-01-00100-CR (Trial Court No.
16,602-2001); 06-01-00101-CR (Trial Court No. 16,603-2001).
2. Nos. 06-01-00102-CR (Trial Court No. 16,607-2001); 06-01-00103-CR (Trial Court No.
16,608-2001).
3. No. 06-01-00098-CR (Trial Court No. 16,599-2001).
4. "Relevant evidence" means evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less probable than it would
be without the evidence.