**Opinion filed June 13, 2013**



In The

# Eleventh Court of Appeals

——————————

## Nos. 11-11-00185-CR, 11-11-00186-CR, & 11-11-00187-CR

——————————

### HAROLD DAVID SHARP, JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause Nos. CCCR-10-03315, CCCR-10-03316, & CCCR-10-3317**

### M E M O R A N D U M   O P I N I O N

In each cause, the jury convicted Harold David Sharp, Jr., Appellant, of the offense of intoxication assault, found the enhancement allegation to be true, made an affirmative deadly weapon finding, and assessed punishment at confinement for twenty years and a fine of $5,000. The trial court ordered the sentences to run consecutively. We affirm.

In each cause, Appellant presents four issues for review. In the first issue, he challenges the sufficiency of the evidence. In the second issue, he asserts that a

complainant's medical expenses were improperly admitted into evidence during the guilt/innocence phase of trial. Appellant argues in his third issue that the trial court should have granted his motion for mistrial after the State commented on his failure to testify. In his final issue, Appellant contends that his "statutory right to jury sentencing" was violated when the trial court imposed cumulative sentences.

Appellant was charged in separate indictments with the intoxication assault of Jennifer McLearen, Jesse Chaney, and Tiffany Nicole Bryant. *See* TEX. PENAL CODE ANN. § 49.07 (West 2011). The jury found that Appellant operated a motor vehicle in a public place while intoxicated and that, by reason of such intoxication, he caused serious bodily injury to each of the complainants when his vehicle struck a tree. All three complainants were passengers in Appellant's vehicle at the time of the accident.

In his first issue, Appellant specifically argues that the evidence was insufficient to show that he "was intoxicated when he drove the car." We review Appellant's challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The record shows that Appellant was driving on County Road 435, described as "an old rough dirt road," when he crashed into a big post oak tree about 160 to 180 feet down the road from a low water crossing. The force of the wreck caused the tree to fall across the road and rendered the occupants of the car unconscious. Appellant does not dispute that he caused serious bodily injury to his passengers. McLearen's spine was crushed in the accident. At the time of trial, she lived in a nursing home and was wheelchair-bound. Chaney suffered a crushed right leg, a broken jaw, and a concussion. He testified that he is now disabled and will have to use a cane for the rest of his life. Bryant suffered massive brain injuries, a broken clavicle, broken ribs, a fractured arm, a spiral fracture in her left leg, a blown-out left ankle, a ruptured spleen, and a broken "L1 lumbar" and sacrum. She was in a coma for five and one-half weeks after the wreck. Bryant's mother testified that Bryant is now legally blind and has severe brain damage.

McLearen, Chaney, and Bryant do not remember anything about the day of the wreck. Thus, none of them could testify that Appellant was intoxicated at the time of the wreck. Chaney's stepfather, Terry Srader, testified that he had been with the group on the day of the wreck. Srader and Appellant had each bought a 30-pack of Keystone beer that afternoon. They went to the lake after purchasing the beer. Chaney, Bryant, Appellant, and Srader drank the beer; McLearen did not. Appellant took Srader home later that evening because Srader was not feeling well. At that time, they were almost out of beer and, with the exception of McLearen, "were all pretty well intoxicated." Srader testified that "they said they was going to get some more beer." Records from the Shade Tree convenience store indicated that Appellant did, in fact, buy more beer after he left Srader's house. At 8:18 p.m. on August 8, 2010, Appellant purchased two 30-packs of Keystone Light beer, cigarettes, and two bottles of wine. The sales clerk at the Shade Tree, who had been trained and knew that it was against the law to sell alcoholic beverages to an

3

intoxicated person, testified at trial that she did not specifically remember Appellant coming into the store. She testified that she would not have sold alcohol to any person that looked like he had lost the normal and customary use of his mental and physical faculties.

Approximately fifteen minutes before dark, Janell Quinn saw a car pass by her house. She "heard them stomp on the gas and it sounded like they were just thrashing in the road, and it went to horn, an unstoppable horn." Janell and her husband, Andy Quinn, drove down to the scene of the accident, which was about one-fourth of a mile from their driveway. Andy testified that there had been no other accidents at that location during the fifteen years that he had lived there. The low water crossing was described as being a gradual dip, not a severe one, and as being made of concrete. Sergeant Jason Shea of the Texas Department of Public Safety (DPS) investigated. He concluded that the driver did not apply his brakes before hitting the tree and that the car did not have a flat tire prior to the accident.

When emergency personnel arrived, all four occupants were trapped inside the car; Appellant was in the driver's seat. All of the occupants were initially transported to the emergency room at the Comanche County Medical Center. Pete Pharis, the chief medical technologist, drew blood from Appellant in the emergency room between 10:00 and 10:10 p.m. Pharis tested Appellant's blood at 10:24 p.m. and determined that alcohol, in the amount of 198 milligrams per deciliter, was present in the plasma of Appellant's blood. Raymond Arthur Waller of the DPS crime lab testified that this amount correlates to between .167 and .176 grams of alcohol per deciliter of whole blood, which is more than twice the legal limit of .08 grams of ethanol per 100 milliliters (one deciliter) of blood. Neither Pharis nor Waller knew what Appellant's blood alcohol concentration would have been at the time of the wreck. Sergeant Shea testified that a human body normally metabolizes alcohol at the rate of .02% per hour, which equates to about one beer

4

per hour. He agreed that a person's blood alcohol level can continue to rise for a short period of time after that person stops drinking.

We agree with Appellant's assertion that there is "no evidence extrapolating the blood test results to the time of the accident." However, we do not agree that the lack of retrograde extrapolation testimony renders the evidence insufficient to support Appellant's convictions. As stated by the Court of Criminal Appeals, a BAC-test result is not "by itself" sufficient to prove intoxication at the time of driving, but "BAC-test results, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication." *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). In this case, as in *Kirsch*, other evidence was introduced from which, in conjunction with the test results, the jury could have determined that Appellant was intoxicated at the time he was driving. Appellant "stomp[ed] on the gas" shortly before the accident, and he did not apply his brakes prior to hitting the tree. Appellant began drinking beer that afternoon and purchased wine and more beer not long before the wreck. Appellant was unconscious at the scene of the wreck and, thus, did not consume any alcohol between the time of the wreck and the time that his blood was drawn at the emergency room. His blood alcohol concentration— approximately one to one and one-half hours after the wreck—was more than twice the legal limit. The court in *Kirsch* relied on similar evidence when it concluded that the evidence was sufficient to support a jury charge on the "per se" theory of intoxication. *Id.* at 745–46. We hold that the evidence in this case is sufficient to show that Appellant was intoxicated at the time that he drove his car into the tree. Appellant's first issue in each cause is overruled.

In his second issue, Appellant argues that the trial court abused its discretion when it admitted McLearen's medical expenses into evidence during the guilt/innocence phase of trial. We must review a trial court's ruling on the

admission of evidence under an abuse of discretion standard of review, and we will not disturb the trial court's ruling unless it lies outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

The record shows that Appellant properly objected when the prosecutor asked McLearen, "How much in medical bills has been charged over all of your treatment from this wreck?" The trial court overruled Appellant's objections, which were based on relevance and unfair prejudice. McLearen answered that her medical bills to date totaled $21,000, that her room in the nursing home costs $115 per day, and that expenses for care in the nursing home are extra. Appellant argues that such victim impact evidence, while admissible at the punishment phase of trial, is not admissible during the guilt/innocence phase of trial. We agree with Appellant that the cost of McLearen's medical care was not relevant to any guilt/innocence issue as it did not tend to make more or less probable the existence of any fact of consequence related to the elements of the crime. *See* TEX. R. EVID. 401; *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990) (holding that evidence of victim's future hardship as a paraplegic was irrelevant to any guilt issue and, thus, inadmissible during guilt stage of trial for attempted capital murder but was relevant and admissible during punishment phase).

However, we do not agree with Appellant's assertion that the error is reversible. We hold that the error in allowing McLearen to testify during the guilt/innocence phase of trial as to the amount of her medical expenses did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Under Rule 44.2(b), nonconstitutional errors that do not affect a defendant's substantial rights "must be disregarded." A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When conducting a Rule 44.2(b) harm

6

analysis based upon the erroneous admission of evidence, an appellate court should consider everything in the record, including "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error." *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

The extent of the complainants' injuries in this case was not contested, and the evidence that each complainant suffered serious bodily injuries was overwhelming. Furthermore, when subsequent evidence of the amount of medical expenses was admitted into evidence, Appellant did not object. Chaney testified without objection that he had incurred "[t]housands" in medical bills. Bryant's mother testified without objection that Bryant had accumulated about "one million dollars" in medical bills. In his closing argument, the prosecutor did not specifically point out McLearen's medical expenses, but he stated that "society" would be "paying at least a million bucks, probably two million bucks in costs . . . for those medical." Evidence of the various injuries suffered by the complainants was properly admitted to prove an element of the offense: that each complainant suffered serious bodily injury. Based on the seriousness of those injuries, a jury would likely have surmised that the required medical care would have been costly. After reviewing the entire record, we cannot say that the erroneous admission of McLearen's medical expenses into evidence during the guilt/innocence phase of trial had a substantial and injurious effect or influence in the jury's determination of guilt. Appellant's second issue in each cause is overruled.

In his third issue, Appellant contends that the trial court abused its discretion in denying the motion for mistrial that Appellant made after the prosecutor

commented on Appellant's failure to testify. The record shows that Appellant asked Sergeant Shea whether the passengers were interviewed. Sergeant Shea responded that there were no witness statements. Appellant later asked Sergeant Shea if he knew of anything that indicated "that anyone else in that car did anything to try to prevent this accident from happening, i.e., such as say, hey, guy, you're too drunk to drive" and if he knew of anything in this case "that indicated any of these three quote victims did anything to stop this criminal act from occurring." Sergeant Shea knew of nothing. Immediately thereafter, the prosecutor asked Sergeant Shea if he understood that the three passengers had no memory of that day. Appellant objected because, at that time, no evidence had been introduced relating to Bryant's lack of memory. After affirmatively stating that none of the victims had any memory from that day, the prosecutor then began another question: "Since those would be the only ones that would know anything other than the Defendant, and if the Defendant is -- you know, I don't know who would know that other than the Defendant." Appellant objected to the prosecutor's reference to Appellant not testifying and requested an instruction to disregard. The prosecutor then explained:

> Well, Your Honor, what I am saying is he's brought up the subject of somebody in the car trying to apparently get the driver to stop, get his intoxicated client to stop and, you know, it doesn't -- I am not following any of that, but then again, since the -- none of the victims have . . . any memory of that, all have memory loss, then he's asking this officer what his investigation was about that.

The trial court sustained Appellant's objection, and Appellant moved for a mistrial as soon as the trial court stated, "I will tell the jury not to consider for any purpose -- ." The trial court denied the motion for mistrial. The prosecutor asked no more questions of Sergeant Shea and did not comment further on the topic.

A mistrial is a trial court's remedy for improper conduct that is so prejudicial as to render the expenditure of further time and expense in continuing the trial wasteful and futile. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Only in extreme circumstances will a mistrial be required. *Id.* The denial of a mistrial is reviewed on appeal for an abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011).

When Appellant asked Sergeant Shea whether any of the passengers had said, "[H]ey, guy, you're too drunk to drive," Sergeant Shea had already testified that the passengers had not given any witness statements, and two of the three passengers had testified that they had no memory of that day. Thus, Appellant's question about statements made by the passengers while they were in the car could only have been answered by Appellant. Appellant invited inquiry into that topic. *See Nethery v. State*, 692 S.W.2d 686, 703 (Tex. Crim. App. 1985). In light of Appellant's questioning of Sergeant Shea and the content of the prosecutor's responsive remark, we cannot hold that the instruction to disregard was ineffective or that the trial court abused its discretion in refusing to grant Appellant's motion for mistrial. *See Dinkins v. State*, 894 S.W.2d 330, 355–56 (Tex. Crim. App. 1995). The magnitude of the prejudice likely caused by the prosecutor's remark, if improper, was not so great that the trial court's instruction to disregard did not cure the error, and the certainty of conviction absent the prosecutor's remark was also great. *See Archie*, 340 S.W.3d at 741–42. Appellant's third issue in each cause is overruled.

In his final issue, Appellant asserts that the trial court's imposition of cumulative sentences violated Appellant's statutory right to have the jury assess his punishment. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (West Supp. 2012). Article 37.07, section 2(b) provides that, upon proper election by the defendant, "the punishment shall be assessed by the same jury." Appellant

recognizes that, pursuant to TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West Supp. 2012), the trial court was authorized, in its discretion, to determine whether to impose concurrent or cumulative sentences. *See* TEX. PENAL CODE ANN. § 3.03(b)(1)(A) (West Supp. 2012) (providing that sentences may run concurrently or consecutively when defendant is convicted of more than one intoxication assault arising out of the same episode). Appellant also recognizes that the Court of Criminal Appeals has held that a trial court's authority to order cumulative sentences does not conflict with a defendant's right to jury sentencing. *See Barrow v. State*, 207 S.W.3d 377 (Tex. Crim. App. 2006); *Johnson v. State*, 492 S.W.2d 505 (Tex. Crim. App. 1973). Appellant suggests that this issue needs to be revisited. As an intermediate appellate court, this court is bound by the precedent of the Court of Criminal Appeals. The controlling precedent is that a trial court's decision to cumulate a defendant's sentences does not conflict with the defendant's right to have a jury assess his punishment. *See Barrow*, 207 S.W.3d 377; *Johnson*, 492 S.W.2d 505. Accordingly, Appellant's fourth issue in each cause is overruled.

We affirm the judgments of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


June 13, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.