PD-1278-17
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/20/2017 3:41 PM
Accepted 12/22/2017 12:04 PM
DEANA WILLIAMSON
CLERK

# PD No. 1278-17

**(COA No. 02-16-00387-CR)**

FILED
COURT OF CRIMINAL APPEALS
12/22/2017
DEANA WILLIAMSON, CLERK

# COURT OF CRIMINAL APPEALS OF TEXAS

**Donald Ray Shivers,**
*Petitioner- Appellant,*

vs.

**The State of Texas,**
*Respondent- Appellee.*

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OFFICE OF THE PUBLIC DEFENDER
WICHITA COUNTY, TEXAS

Jarret Noll # 24081692
ASSISTANT PUBLIC DEFENDER

600 Scott Avenue, Suite 204
Wichita Falls, Texas 76301
940-766-8199
Fax 940-716-8561

**ORAL ARGUMENT IS REQUESTED**

# IDENTITY OF THE JUDGE, PARTIES, AND COUNSEL

Anthony Bates
Attorney for the State at Trial
Assistant District Attorney
900 7th Street, Third Floor
Wichita Falls, Texas 76301
Anthony.Bates@co.wichita.tx.us

Jennifer Ponder
Attorney for the State on Appeal
Assistant District Attorney
900 7th Street, Third Floor
Wichita Falls, Texas 76301
Jennifer.Ponder@co.wichita.tx.us

Appellant
Donald Ray Shivers, Jr.

James Rasmussen
Attorney for Appellant at Trial and on Appeal
Chief Public Defender
600 Scott Street, Suite 204
Wichita Falls, Texas 76301
James.Rasmussen@co.wichita.tx.us

Jarret Noll
Attorney for Appellant on Appeal
Assistant Public Defender
600 Scott Street, Suite 204
Wichita Falls, Texas 76301
Jarret.Noll@co.wichita.tx.us

Honorable Charles Barnard
Presiding Judge, 89th District Court of Wichita County
900 7th Street, Rm 300
Wichita Falls, Texas 76301
Charles.Barnard@co.wichita.tx.us

**Table of Contents**

Identity of Judge, Parties, and Counsel ............................................ ii

Index of Authorities ................................................................. v

Statement Regarding Oral Argument .............................................. 1

Statement of the Case ................................................................ 1

Statement of Procedural History .................................................. 2

Grounds for Review ................................................................... 3

Questions for Review ................................................................. 4

Argument ............................................................................... 5

I.    The appellate court erroneously concluded that victim-impact evidence, particularly evidence focused on speculative, future harm to the victim, was proper evidence of Petitioner's personal responsibility and moral culpability and thus relevant to Petitioner's sentencing. ................................................ 5

    a.    The appellate court's analysis failed to focus on the speculative nature of the particular victim-impact evidence offered, thereby failing to properly consider the unfair prejudice and lack of relevance of the evidence. ....................................... 6

    b.    The appellate court's analysis failed to demonstrate a relationship between the "position of trust and authority" that would lead Petitioner

to anticipate the negative effects his acts would have on the victim and the relevance of expert testimony on the actual effect any such acts did in fact have. ......................................................... 8

II.    The appellate court used the wrong framework in analyzing the issue of Petitioner's cumulated sentencing, thereby missing the constitutional magnitude of the point Petitioner was trying to make. ...................... 12

    a.    The appellate court relied on Barrow in making its decision, and the framework in Barrow prevents meaningful review of the sentence *actually imposed.* ......................................... 12

    b.    The current state of the law deprives criminal defendants of the right against cruel and unusual punishment by forestalling legitimate appellate review of the sentence *actually imposed.* ......................................... 15

Conclusion and Prayer for Relief.................................................... 17

Signature........................................................................................ 18

Certificate of Compliance ............................................................. 19

Certificate of Service..................................................................... 19

Judgment and Opinion Below ................................................. App. A

# Index to Authorities

**Cases:**

*Barrow v. State,*
207 S.W.3d 377 (Tex. Crim. App. 2006) ............4, 5, 12, 13, 14

*Miller-El v. State,*
782 S.W.2d 892 (Tex. Crim. App. 1990). ........................ 5, 10

*Salazar v. State,*
90 S.W.3d 330 (Tex. Crim. App. 2002). ........................... 5, 6

*Stavinoha v. State,*
808 S.W.2d 76 (Tex. Crim. App. 1991). ...................5, 9, 10, 11

*Stevens v. State,*
667 S.W.2d 534 (Tex. Crim. App. 1984). ......................15, 16

*Williamson v. State,*
175 S.W.3d 522 (Tex. App.—Texarkana 2005, no pet.). 15, 16

**Statutes and Rules:**

Tex. Code Crim. Pro. art. 37.07 ................................................. 5, 8

Tex. Penal Code §3.03 ............................................................. 5, 14

Tex. Penal Code §12.32 ............................................................ 5, 14

Tex. R. App. P. 66.3(b) ................................................................ 3

Tex. R. App. P. 66.3(b) ................................................................ 3

Tex. R. Evid. 403 ............................................................5, 8, 10, 11

**Constitutions**

Tex. Const. Art. I § 13 ............................................................. 8, 14

Tex. Const. Art. I § 19.............................................................. 8, 14

U.S. Const. Amend. VIII.........................................................15, 16

U.S. Const. Amend. XIV .........................................................15, 16

## Statement Regarding Oral Argument

Petitioner believes that oral argument will assist the Court in deciding the issues presented and allow counsel to expound upon the analytical history and present state of the law in a way that a brief cannot.

## Statement of the Case

Petitioner made an open plea of guilty to three counts of aggravated sexual assault of a child, waived a jury, and upon evidence at a contested punishment hearing, submitted the matter to the trial court for sentencing.[1] After argument of counsel, the Judge of the 89th District court sentenced Petitioner to three consecutive life sentences.[2] Petitioner timely appealed, and the Second Court of appeals affirmed the judgment of the trial court.[3] This request for a petitioner for discretionary review follows.

---

[1] RR 2:7-12.
[2] RR 7:5.
[3] *Shivers v. State*, No. 02-16-00387-CR, 2017 Tex. App. LEXIS 9872 at *10.

1

## Statement of Procedural History

On October 19, 2017, the Court of Appeals, Second District, ruled in favor of Appellee, holding that the complained of testimony "went directly to Shiver's personal responsibility and moral culpability for the offense" and that each of Petitioner's life sentences was "within the statutorily prescribed range for each conviction" and the trial court's decision to cumulate Shivers' sentences "did not raise the statutory maximum punishment for any of the three offenses," and did not constitute cruel and unusual punishment.[4] No motion for rehearing was filed.

---

[4] *Shivers v. State*, No. 02-16-00387-CR, 2017 Tex. App. LEXIS 9872 at *7-10.

## Ground(s) for Review

The court of appeals decided an important question of state and federal law that has not been, but should be, settled by the Court of Criminal Appeals. See Tex. R. App. P. 66.3(b).

The court of appeals decided an important question of state law in a way that conflicts with the applicable decisions of the Supreme Court of the United States. See Tex. R. App. P. 66.3(c).

## Question(s) Presented for Review

1. Did the appellate court erroneously conclude that victim-impact evidence, particularly evidence focused on speculative, future harm to the victim, was proper evidence of Petitioner's personal responsibility and moral culpability and thus relevant to Petitioner's sentencing?

2. Did the appellate court use the wrong framework in analyzing the issue of Petitioner's cumulated sentencing, thereby missing the constitutional magnitude of the point Petitioner was trying to make?

**Argument**

**I.    The appellate court erroneously concluded that victim-impact evidence, particularly evidence focused on speculative, future harm to the victim, was proper evidence of Petitioner's personal responsibility and moral culpability and thus relevant to Petitioner's sentencing.**

The Court of Criminal Appeals adopted, as a general proposition, that victim-impact evidence may be warranted when that evidence has some bearing on the defendant's personal responsibility and moral culpability.[5] *Stavinoha v. State* has extended such evidence to non-capital cases not as a "question of logical relevance [but as a function] of policy."[6] When considering the admissibility of victim impact or victim character evidence, courts must carefully consider the following factors: (1) how probative is the evidence; (2) the potential of the evidence to impress the factfinder in some irrational, but nevertheless

---

[5] Salazar v. State, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002).
[6] 808 S.W.2d 76, 78 (Tex. Crim. App. 1991).

indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence.[7]

### a. The appellate court's analysis failed to focus on the speculative nature of the particular victim-impact evidence offered, thereby failing to properly consider the unfair prejudice and lack of relevance of the evidence.

In the present case, Petitioner complained that the victim impact evidence in question had an inadequate bearing upon his personal responsibility and moral guilt in this non-homicide context and was therefore not relevant to sentencing. The appellate court failed to focus on Petitioner's argument that such evidence failed to give the factfinder particular insight into the personal responsibility or moral guilt of the offender in the context of aggravated sexual assault cases. Rather, the appellate court zeroed in on the "position of trust or authority" that Petitioner held over the victim.

---

[7] *Salazar v. State*, 90 S.W.3d 330, 336 (Tex. Crim. App. 2002).

In doing so, the appellate court failed to properly consider the probative nature of the proffered testimony – testimony from a sex abuse counselor regarding not just present harm but speculative future harm and testimony from an expert who had never examined the child and who testified largely in the form of speculative hypotheticals. This testimony is not probative of the *Petitioner's* personal responsibility and moral guilt and therefore it cannot be relevant to Petitioner's sentencing.

Perhaps this is why the appellate court's analysis of the probative nature of the evidence is contained in one conclusory, tautological sentence: "As to the admissibility of Cardwell's and Edward's testimony, we note that the evidence had significant probative value in that it underscored Shivers' personal responsibility and moral culpability." By failing to confront the nexus between the proffered testimony and the Petitioner's personal responsibility and moral culpability, the appellate court

failed to make proper inquiry into the unfair prejudice of the evidence.

Expert testimony of any psychological impact has only a tenuous bearing on the personal responsibility or moral guilt of the various types of aggravated sexual assault offenders. Such evidence rarely concerns the defendant at all. The victim becomes the focus of sentencing, not the offender. Rule 403, the Due Process Clause, and the Due Course of Law Clause guard against any attempt to deviate from the purpose of an Article 37.07 punishment hearing – to examine matters relevant to sentencing. These safeguards are meaningless when the appellate court fails to use them to rein in trial courts. In this case, the appellate court failed to properly recognize the scope of Rule 403 in permitting and considering the admission of unduly prejudicial evidence that had little if any probative value.

**b.     The appellate court's analysis failed to demonstrate a relationship between the "position of trust and authority" that would lead Petitioner to**

**anticipate the negative effects his acts would have on the victim and the relevance of expert testimony on the actual effect any such acts did in fact have.**

In *Stavinoha*, the Court held that victim impact evidence was admissible in the punishment phase of an aggravated sexual assault trial because the priest could easily have anticipated the impact his betrayal of trust would have on the parishioner he had sexually assaulted.[8] Relying on this holding, the appellate court in this case held that, because of Petitioner's position as the victim's father, he should have anticipated the negative effects of his acts and thus the testimony of the experts went directly to Petitioner's personal responsibility and moral culpability for the offense.

To the extent the appellate court was bound by this Court's precedent, the holding of *Stavinoha* needs to be reexamined, and this case shows why. Without any evidentiary nexus between the purported relationship of

---

[8] *Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991).

trust and authority Petitioner had over the victim, the appellate court in sweeping generalizations determined that victim impact evidence went to Petitioner's personal responsibility and moral guilt because of this position of trust and authority. No examination was made into the probative force of the expert testimony o*f this particular evidence* because the appellate court instead could rely on *Stavinoha*'s "position of trust and authority" holding, thus short-circuiting the 403 analysis and preventing any legitimate review of the probative value and prejudicial effect of the expert testimony at hand.

The idea that a victim's injury does not outrun the perpetrator's moral culpability[9] makes sense in murder cases where the defendant's object is to cause the death of the victim. It makes perfect sense, for example, for a murderer to "anticipate" that in attempting to extinguish a human life he might instead paralyze the victim. How such evidence can prove his personal responsibility or moral guilt is evident.

---

[9] *Miller-El v. State*, 782 S.W.2d 892, 897 (Tex. Crim. App. 1990).

The proof of such "anticipation" makes less sense in sexual assault cases when the expert testimony relates to possible future harm and mental trauma. The holding in *Stavinoha* should not be misapplied to allow victim impact evidence in all cases where there is some scant evidence of a purported or perceived relationship of trust or authority because to do so would to stultify the 403 analysis required before victim impact evidence can properly be admitted. The only way to prevent such misapplication of *Stavinoha* is to require some nexus between the purported relationship of trust and the victim impact evidence that is offered at trial, which did not happen in this case.

**II.    The appellate court used the wrong framework in analyzing the issue of Petitioner's cumulated sentencing, thereby missing the constitutional magnitude of the point Petitioner was trying to make.**

**a.    The appellate court relied on *Barrow* in making its decision, and the framework in Barrow prevents meaningful appellate review of the sentence *actually imposed*.**

The appellate court relied on *Barrow* in concluding that the cumulation of Petitioner's sentences did not violate Due Process and Due Course of Law. *Barrow* stands for the proposition the Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums.[10] The decision never expressly holds that the proper framework for analyzing the Due Process

---

[10] 207 S.W.3d 377, 382 (Tex. Crim. App. 2006).

issues of cumulated sentences must be done on an individual-sentence level.

Such a holding was unnecessary in light of the appellant's contentions that because he elected to have the jury assess punishment, the trial judge's decision to cumulate was a violation of his constitutional right to a jury trial and his constitutional right to due process.[11] Furthermore, the appellant in that case received two stacked sentences but these sentences were 15- and 20- year sentences respectively.[12] Thus, the question presented in this case is not really answered by resort to *Barrow*.

Here, the trial court stacked three life sentences, which dramatically changes the nature of the analysis. In *Barrow*, the cumulated sentences, taken together, were still within the statutorily described maximum for the charged offense. In this case, the cumulated sentences, taken together, exceed the statutorily described maximum, the point Petitioner tried to make to the appellate court below. By relying on

---

[11] *Id*. at 378.
[12] *Id*.

*Barrow*, the appellate court failed to properly address the constitutional magnitude of Petitioner's argument that the stacking of three life sentences deprived him of due process by allowing the term of imprisonment to exceed the maximum sentence imposed *on a person* by Chapter 12 of the Penal Code.[13]

Section 3.03 of the Penal Code gives a trial court the discretion to cumulate sentences. It does not expressly empower a judge to do by cumulation what he could not do by individual sentences. The legislature restricted the maximum for first-degree felonies to life, and any increase without proper and express notice by the legislature runs afoul of the Due Process Clause.[14]

Should this Court allow the appellate courts to examine these due process claims through the framework implicitly approved in *Barrow*, Petitioner and other litigants will be denied the chance for meaningful appellate review of the sentences that were *actually imposed* and that the

---

[13] See Tex. Penal Code §12.32(a)
[14] *Id.*

defendants will *actually serve*. In other words, the constitutional problems inherent in stacking multiple life sentences evade meaningful review and are arbitrary and capricious so long as *Barrow* can be used to shift the perspective from the overall cumulative sentence to the individual sentences themselves. This Court should grant petition for discretionary review for briefing on the merits as to the proper framework to be applied for these kinds of due process claims.

**b.     The current state of the law deprives criminal defendants of the right against cruel and unusual punishment by forestalling legitimate appellate review of the sentence *actually* imposed.**

Building on his due process arguments above, Petitioner contends that his cumulated sentences are grossly disproportionate as opposed to any single sentence. This point the appellate court failed to address in any depth, citing the opinions in *Stevens* and *Williamson*. However, *Stevens* dealt with the stacking of a twenty-year sentence on

15

a previously-imposed sentence and thus failed to address the situation presented in the instant case – the stacking of three consecutive life sentences[15] – and *Williamson*, a case that dealt with the stacking of life sentences, is not binding on this Court.[16] Furthermore, *Stevens* hardly addressed the issue of stacking, noting that the issue had not even been properly preserved below[17], and in *Williamson* the court noted that the type of sexual offenses against a child are those for which the legislature has explicitly allowed consecutive sentences.[18] Yet this authority sidesteps and precludes review of Petitioner's most salient point – that it is the cumulation of these sentences that exceeds that which the legislature has expressly provided for and in so doing the Petitioner's right against cruel and unusual punishment was violated.

This Court has not properly addressed the appropriate framework for analyzing the stacking of cumulative,

---

[15] 667 S.W.2d 534, 538 (Tex. Crim. App. 1984).
[16] 175 S.W.3d 522, 524 (Tex. App.—Texarkana 2005, no pet.).
[17] 667 S.W.2d at 538.
[18] 175 S.W.3d at 525.

multiple life sentences in the face of an 8th Amendment challenge to the cruel and unusual nature of the stacked sentences and the existence of disproportionality between the gravity of Petitioner's offenses and the punishment assessed. Any framework that glosses over the cumulative effect of three life sentences and the practical effect that will have on Petitioner's parole eligibility and the *actual sentence that he will serve* fails to give proper consideration to the 8th Amendment issues raised by the instant case. Current case law from this Court and the intermediate appellate courts precludes such meaningful review.

## Conclusion and Prayer

The Court should GRANT this petition, permit the parties to fully brief the issue, and ultimately REVERSE this cause and either REFORM the errant judgment reflecting concurrent sentences or, alternatively, REMAND the case to the court of appeals.

Respectfully submitted,

OFFICE OF THE PUBLIC DEFENDER
WICHITA COUNTY, TEXAS

_/s/ Jarret Noll_____
Jarret Noll
SBOT # 24081692
600 Scott Avenue, Ste. 204
Wichita Falls, Texas 76301
(940) 766-8199
Fax: (940) 716-8561

**Certificate of Compliance**

I, the undersigned, certify that this document was produced using Microsoft Word and contains 2,006 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

\_\_/s/ Jarret Noll_____
Jarret Noll

**Certificate of Service**

On the 20th day of December, 2017, I served a copy of this Petition for Discretionary Review on the parties listed below by electronic service and that the electronic transmission was reported as complete. My email address is Jarret.Noll@co.wichita.tx.us.

Jennifer Ponder
Attorney for the State on Appeal
900 7th Street, Third Floor
Wichita Falls, Texas 76301
Jennifer.Ponder@co.wichita.tx.us

\_\_/s/ Jarret Noll_____
Jarret Noll

## Shivers v. State

Court of Appeals of Texas, Second District, Fort Worth

October 19, 2017, Delivered

NO. 02-16-00387-CR

**Reporter**
2017 Tex. App. LEXIS 9872 *

DONALD RAY SHIVERS JR., APPELLANT v. THE STATE OF TEXAS, STATE

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY. TRIAL COURT NO. 55,034-C.

**Judges:** PANEL: SUDDERTH, C.J.; WALKER and KERR, JJ.

**Opinion by:** SUE WALKER

## Opinion

### MEMORANDUM OPINION[1]

### I. INTRODUCTION

Appellant Donald Ray Shivers Jr. entered open pleas of guilty to three counts of aggravated sexual assault of a child, waived his right to a jury, and elected to have the trial court assess his punishment. *See Tex. Penal Code Ann. § 22.021* (West Supp. 2016). The State sought to enhance Shivers's punishment based on his prior felony convictions, and it sought to cumulate his sentences. After a punishment hearing, the trial court found the enhancements true, sentenced Shivers to three life sentences, and ordered the sentences to run consecutively. In three points, Shivers argues that the trial court abused its discretion by admitting certain victim-impact evidence during the punishment hearing and by assessing a punishment that violated due process and due course of law and constituted cruel and unusual punishment. We will affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Shivers dated Megan[2] off and on for thirteen years. Together they had a child, Vanessa. When Vanessa was seven, she told Megan that Shivers had made her perform oral sex on him. Megan confronted [*2] Shivers, and although he initially denied the abuse, he eventually admitted it to her.

Megan took Vanessa to Patsy's House Children's Advocacy Center where Vanessa made a detailed outcry to Shannon May, a forensic interviewer.[3] Vanessa told May that the abuse started when she was "four or five." Vanessa described several instances in which Shivers had her perform oral sex on him, and she described another instance in which Shivers's penis "touched her butt and [was] in her butt crack."

Todd Henderson, a police officer assigned to Patsy's House, was notified of the reported abuse. Officer Henderson conducted a noncustodial interview of Shivers, and Shivers admitted to

---

[1] *See Tex. R. App. P. 47.4.*

[2] To protect the anonymity of the victim in this case, we will use aliases to refer to some of the individuals named herein. *See Tex. R. App. P. 9.8 cmt., 9.10(a)(3); McClendon v. State, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).*

[3] Vanessa was eight years old when May interviewed her.

sexually assaulting Vanessa. Shivers claimed that Vanessa initiated the contact when she "started fondling" him as he was reading her a book before bed. Shivers stated that "he didn't stop her from doing it" and that "as time went on, [he] thought [he] would take it a little further." He admitted that he had Vanessa perform oral sex on him on three separate occasions, including one occasion during which he offered her a popsicle if she performed oral sex on him. Shivers claimed that on another occasion, Vanessa tried "to [*3] sit" on his penis and that it "might have went up her butt, butt hole." He also admitted to performing oral sex on Vanessa on two occasions after she had taken her bath. Shivers was later arrested and charged with three counts of aggravated sexual assault of a child.

## III. SHIVERS'S OBJECTION TO VICTIM-IMPACT EVIDENCE

In his first point, Shivers argues that the trial court erred by admitting victim-impact evidence from two sex-abuse counselors—Susan Cardwell's testimony regarding the effects of Shivers's abuse on Vanessa and Jennifer Edwards's testimony regarding the typical effects of sexual abuse on a child victim—over his objections.[4]

---

[4] Prior to Cardwell's testimony, the trial court granted Shivers's request for a running objection to any victim-impact evidence gleaned from Cardwell. Shivers later asked for that same objection to apply to Edwards's testimony, yet he made this request after Edwards had already testified regarding the typical effects of sexual abuse on a child victim. Thus, it appears that Shivers has not preserved his objection to the victim-impact evidence gleaned from Edwards's testimony. See Tex. R. App. P. 33.1(a)(1) (requiring a timely objection in order to preserve complaint on appeal); Warner v. State, No. 02-07-00464-CR, 2009 Tex. App. LEXIS 5916, 2009 WL 2356861, at *3 (Tex. App.—Fort Worth July 30, 2009, pet. ref'd) (mem. op., not designated for publication) ("Appellant did not ask for his running objection to Officer Gonzales's testimony to apply to all witnesses. . . . And Appellant failed to object when Daniel Rhodes testified about Appellant's statements in the home. Thus, he failed to preserve his complaint as to that testimony."). Out of an abundance of caution, however, we will consider Shivers's running objection to Edwards's testimony as if it had been timely made.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. Martinez v. State, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), cert. denied, 563 U.S. 1037, 131 S. Ct. 2966, 180 L. Ed. 2d 253 (2011). Although there is no bright-line standard for determining when victim-impact and character evidence is admissible, we must respect the legislature's express intent to leave such decisions within the trial judge's sound discretion; we will not disturb such a ruling on appeal unless it falls outside the zone of reasonable disagreement. Hayden v. State, 296 S.W.3d 549, 553 (Tex. Crim. App. 2009).

## B. The Law

During the punishment phase of a trial, a trial court may admit any [*4] matter it deems relevant to sentencing. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2016); Lindsay v. State, 102 S.W.3d 223, 227 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The circumstances of the offense are relevant to sentencing and may be considered by the trier of fact in determining the punishment to be assessed. Jagaroo v. State, 180 S.W.3d 793, 798 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). This includes victim-impact evidence.[5] Outside of the context of homicide cases, victim-impact evidence is evidence regarding "the physical or psychological effect of the crime on the victims themselves." Martin v. State, 176 S.W.3d 887, 903 (Tex. App.—Fort Worth 2005, no pet.) (quoting Lane v. State, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 920, 112 S. Ct. 1968,

---

[5] Shivers addresses victim-impact evidence; he acknowledges that "[i]n this case[,] the evidence primarily dealt with victim[-]impact issues." Although he sometimes mentions victim-character evidence along with victim-impact evidence, he does not separately brief any contention concerning victim-character evidence. Consequently, to the extent Shivers raises any complaint regarding victim-character evidence, we consider it as he briefed it—that is, as subsumed within the victim-impact argument and analysis.

*118 L. Ed. 2d 568 (1992)).*

Victim-impact evidence, including evidence that the defendant should have foreseen or anticipated the particular effects of the offense on the victim, is relevant during the punishment phase "if the factfinder may rationally attribute [such] evidence to the accused's 'personal responsibility and moral culpability'" or blameworthiness. *Hayden, 296 S.W.3d at 552* (quoting *Salazar v. State, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002))*; *Jackson v. State, 33 S.W.3d 828, 833 (Tex. Crim. App. 2000)*, cert. denied, 532 U.S. 1068, 121 S. Ct. 2221, 150 L. Ed. 2d 213 (2001); *Miller-El v. State, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990)*; *Boone v. State, 60 S.W.3d 231, 238 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd)*, cert. denied, 537 U.S. 1006, 123 S. Ct. 490, 154 L. Ed. 2d 406 (2002).

Even when relevant, victim-impact evidence may not be admissible if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See Tex. R. Evid. 403*. When considering the admissibility of victim-impact evidence, courts consider the following factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress the trier [*5] of fact in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Salazar, 90 S.W.3d at 336*.

## C. The Trial Court Did Not Abuse Its Discretion by Admitting the Victim-Impact Evidence

During the punishment hearing, the State called two sex-abuse counselors as witnesses, Susan Cardwell and Jennifer Edwards.

Cardwell testified that she treated Vanessa after the abuse and observed symptoms consistent with those of a child who had been sexually abused. Cardwell noted that Vanessa showed signs of embarrassment regarding the abuse, that she often dissociated by daydreaming, and that she was "hypervigilant" and "avoidant." Cardwell relayed that Vanessa masturbated excessively and that she was not on track socially. Cardwell noted that she had diagnosed Vanessa with post-traumatic stress disorder.

Edwards testified about the common characteristics of sexual offenders and the process of grooming a child victim. She also testified about the potential effects that sexual abuse has on a child victim, including confusion, shame, depression, anxiety, guilt, excessive masturbation, dissociation, and post-traumatic stress.

In determining [*6] whether here the trial court as the factfinder could have rationally viewed the victim-impact testimony of Cardwell and Edwards as bearing on Shivers's personal responsibility and moral culpability for the offenses and whether Shivers should have foreseen or anticipated the particular effect on Vanessa, we note that Shivers was Vanessa's father. He naturally had a position of trust and authority over Vanessa. Shivers took advantage of that position of trust and authority— the abuse started when he was putting her to bed, took place on other occasions after she had taken her bath, and took place after Shivers had offered her a popsicle to perform oral sex on him. We hold that Shivers, as Vanessa's father, should have anticipated that his sexual assaults, and the accompanying betrayal of his position of trust and authority, would have negative effects on Vanessa. *See, e.g., Stavinoha v. State, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991)* (holding victim-impact evidence was admissible because priest "could easily have anticipated the impact his betrayal of trust" would have on parishioner he had sexually assaulted). Because Shivers should have anticipated that his sexual assaults on Vanessa could have negative effects on her, Cardwell's and Edwards's [*7] testimony regarding those negative effects was relevant; their testimony went directly to Shivers's personal responsibility and moral culpability for the offense. *See Hayden, 296 S.W.3d at 552*; *Jackson, 33 S.W.3d at 833*; *Boone, 60 S.W.3d at 238*.

As to the admissibility of Cardwell's and Edwards's testimony, we note that the evidence had significant probative value in that it underscored Shivers's personal responsibility and moral culpability. We also note that the evidence had only a slight potential to impress the factfinder—which was a trial judge in this case, rather than a jury—in some irrational way. Cardwell's testimony regarding the effect the sexual abuse had on Vanessa spans only a handful of pages, while Edwards's testimony regarding the typical effects sexual abuse has on a child victim spans only three pages. The State needed this evidence to demonstrate the negative effects of Shivers's sexual abuse because Vanessa did not testify in this case due to an agreement between the parties. We hold that the trial court did not abuse its discretion by admitting Cardwell's and Edwards's testimony. *See Martinez, 327 S.W.3d at 736; Salazar, 90 S.W.3d at 336.*

We overrule Shivers's first point.

## IV. SHIVERS'S PUNISHMENT DID NOT VIOLATE DUE PROCESS OR DUE COURSE OF LAW

In his second point, Shivers argues that [*8] his punishment exceeded the maximum permitted by due process and due course of law. Pointing to *section 12.32(a) of the penal code*,[6] Shivers argues that "*as applied to him*, the cumulation of his sentences amount[s] to life without parole, and thus, violate[s] a state-created right limiting first[-]degree sentences to life imprisonment." The State counters that Shivers has not applied the proper framework in analyzing the due process and due course of law concerns of his sentences. The State argues that the correct framework is to review each individual sentence as it corresponds to an offense, rather than to look at the cumulative total of the

sentences as it corresponds to an offense. We agree.

In *Barrow v. State*, Barrow was charged with two counts of sexual assault of a child, and the jury assessed his punishment at fifteen years' confinement for the first count and at twenty years' confinement for the second count. *207 S.W.3d 377, 378 (Tex. Crim. App. 2006)*. The trial court ordered Barrow's sentences to run consecutively. *Id.* On appeal, Barrow argued that the trial court's decision to cumulate his sentences violated due process. *Id. at 379-80*. In evaluating his due-process complaint, the court of criminal appeals looked at the sentence for each offense, rather than the cumulative total [*9] of the sentences. *Id. at 379*. The court noted that "[a] valid sentence within the statutorily prescribed range was imposed as to each conviction. . . . [And] [t]he decision to cumulate the two sentences did not raise the 'statutory maximum' punishment for either offense." *Id.*

Shivers pleaded guilty to three counts of aggravated sexual assault of a child, each of which was a first-degree felony. *See Tex. Penal Code Ann. § 22.021*. The punishment range for such an offense is life or not more than ninety-nine years or less than five years. *Id. § 12.32(a)*. Each of Shivers's life sentences was thus "within the statutorily prescribed range" for each conviction, and the trial court's decision to cumulate Shivers's sentences "did not raise the statutory maximum punishment for [any of the three] offense[s]." *Barrow, 207 S.W.3d at 379* (internal quotation omitted); *see Tex. Penal Code Ann. § 3.03(b)* (West Supp. 2016) (giving trial judges the ability to cumulate sentences under certain circumstances).

We overrule Shivers's second point.

## V. SHIVERS'S PUNISHMENT DID NOT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT

In his third point, Shivers argues that the cumulation of his sentences constitutes cruel and unusual punishment because it is disproportionate to the crimes he committed. We will not disturb a

---

[6] *Section 12.32(a)* provides that "[a]n individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the Texas Department of Criminal Justice for life or for any term of not more than 99 years or less than 5 years." *Tex. Penal Code Ann. § 12.32(a)* (West 2011).

trial court's punishment [*10] decision "absent a showing of abuse of discretion and harm." *Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)*. Generally, a sentence is not cruel, unusual, or excessive if it falls within the range of punishment authorized by a statute. *Hammer v. State, 461 S.W.3d 301, 303-04 (Tex. App.—Fort Worth 2015, no pet.)* (citing *Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973))*. Even if a sentence falls within the statutory range for that crime, however, it must be proportional to the crime. *Solem v. Helm, 463 U.S. 277, 290, 103 S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983)*. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138, 63 L. Ed. 2d 382 (1980)*.

In addressing a disproportionality complaint, courts first compare the gravity of the offense against the severity of the sentence. *Moore v. State, 54 S.W.3d 529, 542 (Tex. App.—Fort Worth 2001, pet. ref'd)*. If a court determines that the sentence is grossly disproportionate to the offense, it then looks at the evidence concerning sentences imposed on other criminals in the same jurisdiction and sentences imposed for commission of the same crime in other jurisdictions. *Id. at 541-42*.

Comparing the gravity of Shivers's offenses against the severity of his sentences, we conclude that, given the nature of the offenses and the punishment ranges, coupled with Shivers's prior felony convictions,[7] Shivers's punishment of three consecutive life sentences was not unconstitutionally disproportionate for the offenses for which he [*11] was convicted. *See id. at 542-43; see also Stevens v. State, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984)* (holding cumulation of sentences did not constitute cruel and unusual punishment). Further, even if we had determined that a disproportionality existed between the gravity of Shivers's offenses and the punishments assessed, there is no evidence in the record comparing this result with others in the same jurisdiction for this situation or with those imposed on defendants in other jurisdictions who committed a series of similar offenses. Shivers has thus not shown that the trial court abused its discretion by ordering his sentences to run consecutively. *See Williamson v. State, 175 S.W.3d 522, 525 (Tex. App.—Texarkana 2005, no pet.)* (holding defendant's punishment of three consecutive life sentences for three counts of aggravated sexual assault of a child was not cruel and unusual punishment).

We overrule Shivers's third point.

## VI. CONCLUSION

Having overruled Shivers's three points, we affirm the trial court's judgment.

/s/ Sue Walker

SUE WALKER

JUSTICE

PANEL: [*12] SUDDERTH, C.J.; WALKER and KERR, JJ.

DO NOT PUBLISH

*Tex. R. App. P. 47.2(b)*

DELIVERED: October 19, 2017

---

[7] In determining whether a sentence is grossly disproportionate, the reviewing court may consider the defendant's prior adjudicated and unadjudicated offenses. *State v. Simpson, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016)*. Here, Shivers had previously been convicted of possession of a controlled substance, a second-degree felony. *See Tex. Health & Safety Code Ann. § 481.115* (West 2017). He had also been previously convicted of three counts of burglary of a vehicle, each a third-degree felony. *See Tex. Penal Code Ann. § 30.04* (West 2011). Shivers also had been previously convicted of criminal nonsupport, a state-jail felony. *See id. § 25.05* (West 2011).

End of Document